[No. A015068. First Dist., Div. Two. Oct. 22, 1985.]

FOCUS CABLE OF OAKLAND, INC., Plaintiff and Respondent, v. COUNTY OF ALAMEDA et al., Defendants and Appellants.

520

522

## COUNSEL

Richard J. Moore, County Counsel, and James F. May, Senior Deputy County Counsel, for Defendants and Appellants.

Paul W. Baker and Ehrman, Flavin, Devine & Baker for Plaintiff and Respondent.

## OPINION

**ROUSE, J.**—Defendants County of Alameda and the City of Oakland appeal from a judgment which grants plaintiff Focus Cable of Oakland, Inc. (Focus) a refund of taxes in the amount of $62,096.77 for the 1973-1974 assessment year.

The underlying facts of this case are not in dispute. Plaintiff Focus owns and operates a cable television system in the City of Oakland, Alameda County, California. The Alameda County Assessor (assessor) determined that the value of plaintiff's property on the 1973 lien date (Mar. 1) was $5,403,960, and entered on the 1973-1974 assessment roll a regular assessment against the property in that amount. Plaintiff did not file an equalization application challenging the amount of the assessment.[1]

---

[1]Former Revenue and Taxation Code section 1607 (now § 1603) required that a taxpayer file an application for equalization with the local board of equalization prior to September 15 of the year the assessment was levied before any reduction in assessment is made.

All statutes refer to the Revenue and Taxation Code unless otherwise indicated.

Subsequently, the State Board of Equalization (SBE) conducted an audit of plaintiff's property and determined that the full cash value of the property was actually $6,583,060. The assessor adopted the valuation of the SBE and, pursuant to sections 531 and 533,[2] entered on the 1974-1975 assessment roll an escaped assessment for the 1973 tax year in the amount of $1,179,100, representing the difference between the original assessment of the property ($5,403,960) and the assessor's revised opinion of full cash value ($6,583,060).

Upon entry of the escaped assessment, plaintiff filed with the Alameda County Assessment Appeals Board (board) a timely application for reduction of assessment pursuant to section 1605.[3]

In the course of preparing for the hearing before the board, the assessor conducted a new audit and appraisal of the property and determined that on the 1973 lien date the full cash value of plaintiff's property was, in fact, $3,707,804 and not $6,583,060. Thereafter, at the hearing before the board, the assessor indicated the value of the property was $3,707,804. Plaintiff concurred with that opinion of value.

At the hearing, plaintiff argued that the board was required to determine the full cash value of the property and to order that value reflected on the roll by reducing the escaped assessment *and* the original assessment. However, the board refused to determine the full cash value of the property and merely reduced the escaped assessment to zero, reasoning that it had no jurisdiction to investigate the correctness or accuracy of the original 1973 assessment.

On October 17, 1977, plaintiff filed with the Alameda County Board of Supervisors (board of supervisors) a timely claim for refund of property taxes pursuant to sections 5096 and 5097,[4] claiming a refund of taxes and interest paid on the 1973 assessment of the property. The amount of the refund claimed was based upon the difference between the original assess-

---

[2]Section 531 requires the assessor to assess any property which has escaped assessment for a prior year, and to "assess the property on discovery at its value on the lien date for the year for which it escaped assessment." Section 533 provides that the new assessment be entered on the current assessment roll.

[3]Section 1605 provides that a taxpayer may challenge an escaped assessment by filing an application for equalization with the local board of equalization within 60 days of being notified of the assessment.

[4]Section 5096 provides that the board of supervisors shall order any taxes which were erroneously or illegally collected to be refunded. Section 5097 sets forth the procedure for making a claim for refund.

ment and the full cash value of the property on the 1973 lien date of $3,707,804. The board of supervisors denied the claim.

As a result of this evidence the trial court concluded inter alia that: (1) since the property had been erroneously overassessed for the 1973-1974 tax year, the assessor was constitutionally required, under the self-executing command of uniformity of taxation in article XIII, section 1, of the California Constitution, to correct the erroneous overassessment; (2) pursuant to section 533 the assessor was required to notify plaintiff of the amount of the overassessment and of the fact that plaintiff had the right to file a claim for refund of taxes with the board of supervisors; (3) when plaintiff filed for reduction of the escaped assessment with the board, the board was obligated to determine the full cash value of that property and to order its full cash value reflected on the assessment roll by reducing both the escaped assessment and the original assessment; and (4) upon plaintiff's filing its claim for refund, the board of supervisors was required, pursuant to article XIII, section 16, of the California Constitution and section 533, to order the refund of taxes claimed by plaintiff.

I.

*Jurisdiction of Assessment Appeals Board*

On appeal defendants contend, as they did at the hearing before the board and at trial, that the board lacked jurisdiction to reduce the original assessment on plaintiff's property. The contention is based on an assumption that the procedure for challenging the original assessment in the present case is set forth in section 1603 (former § 1607),[5] whereas the procedure for challenging the subsequent escaped assessment is set forth in section

---

[5]In 1974 former section 1607 was twice amended and renumbered as section 1603. (See Stats. 1974, ch. 180, § 13, p. 359; Stats. 1974, ch. 311, § 49, p. 612.) The statute was again amended in 1976, 1977, 1978 and 1979. For purposes of this appeal, we need only note that at all pertinent times, subdivision (a) of the section provided as follows: "A *reduction in an assessment on the local roll* shall not be made unless the party affected or his agent makes and files with the county board a verified, written application showing the facts claimed to require the reduction and the applicant's opinion of the full value of the property." Subsequent pertinent portions of the statute provided that taxpayers in plaintiff's position must file an application for reduction on or before September 15 of the year the assessment is placed on the local roll.

1605.[6] Since plaintiff only filed an application for reduction under section 1605, defendants maintain that the board was without power to act upon the initial assessment on the local roll.

The California Constitution, article XIII, section 16 (formerly § 9) provides in pertinent part as follows: "Except as provided in subdivision (g) of Section 11, the county board of equalization, *under such rules of notice as the county board may prescribe,* shall equalize the values of all property on the local assessment roll by adjusting individual assessments." (Italics supplied.) Consequently, it has been held that a county assessment appeals board, as an administrative agency, has the right to determine its own jurisdiction. (*United States* v. *Superior Court* (1941) 19 Cal.2d 189, 195 [120 P.2d 26]; *Midstate Theatres, Inc.* v. *Board of Supervisors* (1975) 46 Cal.App.3d 204, 212 [119 Cal.Rptr. 894]; *County of Sacramento* v. *Assessment Appeals Bd. No. 2* (1973) 32 Cal.App.3d 654, 663 [108 Cal.Rptr. 434]; 59 Ops.Cal.Atty.Gen. 182 (1976).)

In the present case the board expressed its equitable concern that under section 1605 the county assessor could possibly increase its initial assessment of property, but that the taxpayer was unable to decrease that same initial assessment. Nevertheless, the board finally determined that it had no jurisdiction to investigate the correctness or accuracy of the original 1973 assessment, since no application for reduction had been filed under section 1603. In light of the above-cited authority, the board had the right to limit the scope of its jurisdiction. However, this does not settle the question of whether plaintiff was entitled to relief.

---

[6]At all pertinent times section 1605 provided in part: "(a) An assessment made outside of the regular assessment period is not effective for any purpose, including its review, equalization and adjustment by the county board, until the assessee has been notified thereof personally or by United States mail at his address as contained in the official records of the county assessor. Receipt by the assessee of a tax bill based on said assessment shall suffice as such notice. [¶] (b) Upon application for reduction pursuant to subdivision (a) of Section 1603, such assessment shall be subject to review, equalization and adjustment by the county board. The application must be filed with the clerk no later than 60 days after the date on which the assessee was notified."

However, it should be noted that in 1978 the following subdivision was added to section 1605: "(d) If an audit of the books and records of any profession, trade, or business pursuant to Section 469 of this code discloses property subject to an escaped assessment for any year, *then the original assessment* of all property of the assessee at the location of the profession, trade, or business for that year shall be subject to review, equalization and adjustment by the county board of equalization or assessment appeals board pursuant to Chapter 1 (commencing with Section 1601) of Part 3 of this division, except in those instances when such property had previously been equalized for the year in question by the county board of equalization or assessment appeals board. The application must be filed with the clerk no later than 60 days after the mailing of the tax bill on such assessment to the assessee." (Stats. 1978, ch. 732, § 4, p. 2289, italics supplied.)

## II.

### *Section 533*

At all pertinent times, the second paragraph of section 533 provided: "If the assessments are made as a result of an audit which discloses that property assessed to the party audited has been erroneously or illegally assessed either for a past tax year for which taxes have been paid and a claim for refund is not barred by Section 5097 or for any tax year for which the taxes are unpaid, the assessed values erroneously or illegally assessed shall be an offset only against the proposed escape assessment for the same tax year. If such values exceed the proposed escape assessment for this year, the assessor shall notify the party audited of the amount of the excess and the fact that a claim for cancellation or refund may be filed with the county as provided by Sections 4986 or 5096." (Stats. 1970, ch. 540, § 1, p. 1036.) Based on this statute the trial court concluded both that the assessor was required to follow the provisions of the statute and that the board of supervisors was required to order the refund claimed by plaintiff. Defendants attack the conclusions from two directions.

### a. *Failure to State That Claim Was Based on Section 533*

Citing section 5142[7] and *Barnes* v. *State Bd. of Equalization* (1981) 118 Cal.App.3d 994 [173 Cal.Rptr. 742], defendants maintain the trial court lacked jurisdiction to grant relief on grounds which were not specified in the claim for refund or complaint. (Pp. 1001-1002.) In addition, defendants argue that since the complaint never alleged that the assessor had violated section 533 and did not even name the assessor as a defendant, the trial court should not have made any conclusions on this issue.

It has long been the policy of California courts to liberally construe claims for refund of taxes. "In recognition of the reality that many, if not most, applicants are laymen who would be denied hearings if formalized technical rules were followed, it has been the judicial policy of this state to construe such applications liberally in favor of the applicant. It has been stated that an application is adequate and 'the purpose of the statutory requirement is served if the board may know from said application "or have some reasonable means of ascertaining" therefrom what the claim of the applicant is, to the end that such claims may be investigated by the assessing

---

[7]Section 5142 provides: "No action shall be commenced or maintained under this article unless a claim for refund has first been filed pursuant to Article 1 (commencing with Section 5096) of this chapter. [¶] No recovery shall be allowed in any such action upon any ground not specified in the claim."

authorities prior to the hearing.' [Citation.]" (*Midstate Theatres, Inc.* v. *Board of Supervisors, supra,* 46 Cal.App.3d 204, 209.)

In the present case, plaintiff's claim for refund from the board of supervisors was written in accordance with sections 5096 and 5097. Although the letter did not specifically state that the claim was based upon section 533, it discussed all material facts that had occurred up until that point in time and specifically stated that at the hearing before the board, "the Alameda County Assessor and Focus Cable of Oakland, Inc. stipulated that the 1973 escaped assessment should be reduced to zero, based upon a new appraisal of the Oakland cable television system made by the Alameda County Assessor and concurred in by Focus Cable of Oakland, Inc., which indicated a full cash value of the system as of March 1, 1973, of $3,707,804." The letter then set forth the amount of the original assessment, the true value established before the board and the amount of refund requested. The same allegations were presented in plaintiff's complaint, again without reference to section 533. Although plaintiff did not specifically refer to section 533 until it filed its trial brief, it was always clear from the facts presented in both its letter to the board of supervisors and in its complaint that plaintiff was claiming it had been erroneously assessed in the original assessment.

b. *Authority of Board of Supervisors to Grant Refund*

Defendants also contend that the statutory authorization in section 5096[8] for the board of supervisors to refund taxes "[e]rroneously and illegally collected" does not apply in the present case where there was a dispute about valuation.

As a general rule when the assessor erroneously overvalues property, a dispute arises regarding the proper valuation. Such a dispute falls within the special competence of the board of equalization. (*Stenocord Corp.* v. *City etc. of San Francisco* (1970) 2 Cal.3d 984, 988 [88 Cal.Rptr. 166, 471 P.2d 966].) Thus, the exhaustion of administrative remedies before the local assessment appeals board is normally a prerequisite to filing an action in the courts. (*Id.,* at p. 987; *Westinghouse Elec. Corp.* v. *County of Los Angeles* (1974) 42 Cal.App.3d 32, 36 [116 Cal.Rptr. 742].) However, an exception is made when the assessment is a nullity as a matter of law and no factual questions exist regarding the valuation of the property. (*Steno-*

---

[8]Section 5096 provides, in pertinent part, that "On order of the board of supervisors, any taxes paid before or after delinquency shall be refunded if they were: [¶] . . . (b) Erroneously or illegally collected."

*cord Corp.* v. *City etc. of San Francisco, supra,* 2 Cal.3d 984, 987.) This is precisely the situation before us. ▆▆▆ Although a valuation dispute was presented when the assessor adopted the valuation of the SBE and entered the escaped assessment, after the assessor conducted a new audit and appraisal no dispute existed; both plaintiff and defendants agreed that the true value of plaintiff's property on the 1973 lien date was $3,707,804. Therefore, it was proper for the board of supervisors to refund the excess tax payment pursuant to section 5096.

The judgment is affirmed.

Kline, P. J., and Smith, J., concurred.