[No. D017936. Fourth Dist., Div. One. Aug. 30, 1994.]

SEA WORLD, INC., Plaintiff and Appellant, v.
COUNTY OF SAN DIEGO, Defendant and Respondent.

## COUNSEL

Gray, Cary, Ware & Friedenrich, Gray, Cary, Ames & Frye, W. Alan Lautanen and Charles L. Deem for Plaintiff and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Diane Bardsley, Chief Deputy County Counsel, and Andrew J. Freeman, Deputy County Counsel, for Defendant and Respondent.

## OPINION

**HUFFMAN, J.**—In this action by Sea World, Inc. (Sea World) for refund of property taxes paid in 1989, we revisit the fascinating world of real property reassessments after the passage of Proposition 13[1] to determine whether the trial court properly granted the County of San Diego's (County's) motion for summary judgment. The court held that Sea World had failed to exhaust its administrative remedy of seeking equalization of its 1989 supplemental tax assessment, thereby precluding Sea World from claiming a refund for that year. In so deciding, the court found the addition of section 51.5 to the

---

[1]On June 6, 1978, Proposition 13 added article XIII A to the California Constitution, which provides in relevant part in section 1, subdivision (a): "The maximum amount of any ad valorem tax on real property shall not exceed one percent (1%) of the full cash value of such property." Pursuant to section 2, subdivision (a) of article XIII A: "The full cash value means the county assessor's valuation of real property as shown on the 1975-76 tax bill under 'full cash value' or, thereafter, the appraised value of real property when purchased, newly constructed, or *a change in ownership has occurred after the 1975 assessment.*" (Italics added.)

Revenue and Taxation Code[2] in 1988 (added by Stats. 1987, ch. 537, § 2) did not provide Sea World an avenue around the section 80 proscription against retroactive application of a base year value reduction. (See *Osco Drug, Inc.* v. *County of Orange* (1990) 221 Cal.App.3d 189 [272 Cal.Rptr. 14] [hereafter *Osco*].)

Sea World appeals, contending section 51.5, the California Constitution, and principles of equity require an appropriate refund in this case. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

This case was submitted to the court for decision based on the following stipulated facts: On November 30, 1989, Harcourt Brace Jovanovich, Inc., sold all of the stock of Sea World to Busch Entertainment Corporation. This sale resulted in a "change of ownership" (§§ 60, 64, subd. (c)), requiring the reassessment of Sea World's land and improvements to its real estate to their fair market value as of the date of change. Consequently, the county assessor reassessed Sea World's land and improvements at the value of $170 million as of November 30, 1989, allocating $41 million to Sea World's possessory interest and $129 million to its real estate improvements.

On June 22, 1990, the assessor mailed to Sea World a notification of supplemental assessment for 1989 which reflected this new base year value. Sea World received this notice, as well as a supplemental tax bill mailed September 14, 1990, and thereafter filed an application (No. 90-1240) for equalization of the 1989 supplemental assessment with the County Assessment Appeals Board (the Board) on September 24, 1990, challenging the assessor's valuation only as to the real estate improvements.

Meanwhile, on June 29, 1990, during the usual course of taxing matters, the assessor sent Sea World notification of taxable value for 1990, which showed the assessed value as $170 million, with $129 million allocated to real property improvements and $41 million to the possessory interest in the land. On September 14, 1990, Sea World filed with the Board an application (No. 90-584) for equalization of the 1990 assessment, challenging only the value of the improvements.

---

[2]Unless otherwise indicated, all references are to the Revenue and Taxation Code and its subdivisions, except in the case of article XIII A which is always a reference to that provision of the California Constitution.

In each of its applications for equalization, Sea World stated it also constituted a claim for a refund of taxes paid as permitted by section 5097, subdivision (b).[3]

On March 13, 1991, the Board held Sea World's application No. 90-1240 was untimely filed and denied its claim for a refund of the 1989 supplemental tax. A hearing on Sea World's application No. 90-584 was scheduled for July 1991.

At that time, the Board heard evidence and argument concerning the 1990 assessment value of Sea World's real property improvements. The assessor's representative recommended a $109 million value for such improvements for the March 1, 1990 lien date, based upon the assessor's opinion of the fair market value of the improvements in light of information provided by Sea World regarding the November 30, 1989 acquisition and stock sale. Sea World asserted a fair market value for its land improvements at $67 million. The Board took the matter under submission.

While the Board's decision was pending, Sea World filed the present action September 12, 1991, claiming a refund of a portion of the supplemental taxes it had paid pursuant to the 1989 supplemental tax assessment.[4] This action was stayed until after the Board reached its decision as to the assessed value of Sea World's improvements as of the March 1, 1990, lien date.

On February 13, 1992, the Board issued its decision on Sea World's 1990 application No. 90-584, determining the assessed value of the real property improvements as of the March 1, 1990, lien date was $89.5 million, based upon information provided by Sea World and the assessor concerning the November 30, 1989, acquisition and the fair market value of Sea World's improvements on that date. The Board specifically found the assessor's use of the income approach for valuation of the improvements was proper, but that the assessor had incorrectly reduced this amount by the allocated good will of 25 percent rather than 30 percent for the San Diego theme park. Neither Sea World nor the assessor appealed this determination or the findings.

---

[3]Section 5097, subdivision (b) provides in pertinent part: "An application for a reduction in an assessment filed pursuant to Section 1603 shall also constitute a sufficient claim for refund under this section if the applicant states in the application that the application is intended to constitute a claim for refund." Although a supplemental assessment is considered an assessment made *outside the regular assessment period as provided in section 1605 for purposes of equalization* (§ 75.31, subd. (c)), application for such equalization is still under subdivision (a) of section 1603 and will thus also constitute a claim for a refund under section 5097, subdivision (b) if it so states. (§§ 1605, subd. (b), 5097, subd. (b).)

[4]Sea World paid the County tax collector the first installment of the 1989 supplemental tax bill on November 26, 1990, and the second installment on April 2, 1991.

On May 5, 1992, the County made the appropriate refund to Sea World of a portion of the 1990 property taxes.[5] The County, however, refused to refund any portion of the property taxes paid by Sea World with respect to the 1989 supplemental assessment.

After the Board issued its decision, the trial court lifted the stay in this case. Because the tax refund action raised no triable issues of material fact and merely presented questions of law, the parties agreed to have the trial court decide the legal issues on stipulated facts in a motion for summary judgment, which would be dispositive of the entire case. In accordance with that stipulation and order of the trial court, Sea World filed its motion for summary judgment on July 31, 1992.

Based upon the undisputed facts, the parties presented the trial court with the questions of whether Sea World had filed a timely assessment appeal, or application for equalization, of the supplemental assessment for 1989 and whether the 1990 Board determination of base year value constituted a "correction" entitling Sea World to a refund under section 51.5, subdivisions (b) and (d).[6] The court ruled Sea World's application for equalization and claim for refund of 1989 supplemental taxes was untimely and Sea World's

---

[5]The County remitted to Sea World a check for $562,695.49.

[6]Evidence before the trial court included: letters from the State Board of Equalization (SBE) to all county assessors in California concerning section 51.5 and amendments to it and other statutes pertinent to the case; the Senate bill and legislative analysis for section 51.5; the fact section 1605, subdivision (c) had been amended effective June 11, 1990, to allow a county board of supervisors (Supervisors) to adopt a resolution providing an appeal or equalization application from a supplemental assessment be filed no later than 60 days after the date of mailing the supplemental tax bill rather than after notice of the assessment; the fact the Supervisors so adopted this new filing rule effective January 1, 1991; and the facts that, assuming the new base value for 1990 was the corrected value for 1989, the supplemental tax would have been $126,313 for the improvements and the amount of refund would be $237,483 (the amount actually paid for improvements, $363,796, less $126,313).

Section 51.5 was added to the Revenue and Taxation Code in 1988 to read as follows: "(a) Notwithstanding any other provision of the law, any error or omission in the determination of a base-year value pursuant to paragraph (2) of subdivision (a) of Section 110.1, including the failure to establish that base-year value, which does not involve the exercise of an assessor's judgment as to value, shall be corrected in any assessment year in which the error or omission is discovered. [¶] (b) *An error or an omission described in subdivision (a) which involves the exercise of an assessor's judgment as to value may be corrected only if it is placed on the current roll or roll being prepared within four years after July 1 of the assessment year for which the base-year value was first established.* [¶] (c) An error or an omission involving the exercise of an assessor's judgment as to value shall not include errors or omissions resulting from the taxpayer's fraud, concealment, misrepresentation, or failure to comply with any provision of law for furnishing information required by Sections 441, 470, 480, 480.1, and 480.2, or from clerical errors. [¶] (d) *If a correction authorized by subdivision (a) or (b) reduces the base-year value, appropriate cancellations or refunds of tax shall be granted in accordance with this division. If the correction increases the base-year value, appropriate escape assessments shall be imposed in accordance with this division.* [¶] (e) The existence of

interpretation of section 51.5, subdivision (b) was inconsistent with section 80, subdivision (a)(3) and (a)(5),[7] which precluded Sea World from seeking

a clerical error shall be proved by a preponderance of the evidence, except that if the correction is made more than four years after July 1 of the assessment year for which the base-year value was first established the clerical error shall be proved by clear and convincing evidence, including the papers in the assessor's office. Nothing in this subdivision shall be construed to change the standard of proof applicable to a determination of the value of property. [¶] (f) For purposes of this section: [¶] (1) 'Assessment year' means an assessment year as defined in Section 118. [¶] (2) 'Clerical errors' means only those defects of a mechanical, mathematical, or clerical nature, not involving judgment as to value, where it can be shown from papers in the assessor's office or other evidence *that the defect resulted in a base-year value that was not intended by the assessor at the time it was determined.*" (Italics added to indicate the subsections on which Sea World relied for support of its refund claim.)

Subdivision (b) of section 51.5 was amended effective June 11, 1990, to add ", or is otherwise corrected," and to delete the hyphen from "base-year" so that it then read: "An error or an omission described in subdivision (a) which involves the exercise of an assessor's judgment as to value may be corrected only if it is placed on the current roll or roll being prepared, *or is otherwise corrected,* within four years after July 1 of the assessment year for which the *base year* value was first established." (Stats. 1990, ch. 126, § 2, italics added to indicate changes.)

The Legislative Counsel's Digest filed for Senate Bill No. 124 reveals this amendment to section 51.5, subdivision (b) was added to "provide that [the] 4-year limitation also applies to errors or omissions regarding the establishment of base year values involving the assessor's judgment which can be corrected without reflecting the change on the current roll or the roll being prepared." (Stats. 1990, ch. 126, No. 7 West's Cal. Legis. Service, p. 884; SBE Letter of Intent to Governor Deukmejian re Sen. Bill No. 124 (June 7, 1990).)

[7]At the time section 51.5 was added to the tax statutes, section 80 was amended to add a new paragraph (4) to subdivision (a) and renumber the old as paragraph (5). As so amended, section 80 read as follows: "(a) An application for reduction in the base-year value of an assessment on the current local roll may be filed during the regular filing period for that year as set forth in Section 1603 or Section 1840, subject to the following limitations: [¶] (1) The base-year value determined by a local board of equalization or by the State Board of Equalization, originally or on remand by a court, or by a court shall be conclusively presumed to be the base-year value for any 1975 assessment which was appealed. [¶] (2) The base-year value determined pursuant to paragraph (1) of subdivision (a) of Section 110.1 shall be conclusively presumed to be the base-year value unless an equalization application is filed no later than the regular filing period following the 1980 lien date. Once an application is filed, the base-year value determined pursuant to that application shall be conclusively presumed to be the base-year value for that assessment. [¶] *(3) The base-year value determined pursuant to paragraph (2) of subdivision (a) of Section 110.1 shall be conclusively presumed to be the base-year value, unless an application for equalization is filed during the regular equalization period for the year in which the assessment is placed on the assessment roll or in any of the three succeeding years. Once an application is filed, the base-year value determined pursuant to that application shall be conclusively presumed to be the base-year value for that assessment.* [¶] (4) The base-year value determined pursuant to Section 51.5 shall be conclusively presumed to be the base-year value unless an application for equalization is filed during the appropriate equalization period for the year in which the error is corrected or in any of the three succeeding years. Once an application is filed, the base-year value determined pursuant to that application shall be conclusively presumed to be the base-year value for that assessment. [¶] *(5) Any reduction in assessment made as the result of an appeal under this section shall apply for the assessment year in which the appeal is taken and prospectively thereafter.* [¶]

a refund of the 1989 taxes. The court therefore denied Sea World's motion and ordered judgment entered in favor of County. Such judgment was entered November 10, 1992.[8]

On its timely filed appeal, Sea World renews its arguments on section 51.5 and the exhaustion of administrative remedies. Sea World asks that we reverse the trial court's determination. As the matter below was submitted on stipulated facts, the trial court was presented with purely legal questions and its statement of decision is not binding on us. (*Bret Harte Inn, Inc.* v. *City and County of San Francisco* (1976) 16 Cal.3d 14, 23 [127 Cal.Rptr. 154, 544 P.2d 1354].) We are thus free to draw our own conclusions of law from the undisputed facts. (*Jongepier* v. *Lopez* (1983) 142 Cal.App.3d 535, 538 [191 Cal.Rptr. 131].)[9]

## DISCUSSION

### A. The Statutory Scheme

Preliminarily, we set out the basic statutory scheme concerning the assessment of property values in California. Before the enactment of article XIII A, a county assessor was required to annually discover and assess at its "full value" all taxable property within his county on the lien date (usually March 1), to enter that value on the assessment roll, and to deliver the roll to the county auditor on or before July 1. (§§ 110, 110.5, 401.3, 405, 601-617, 2192.) If after certifying the assessment roll the assessor discovered that a property had been assessed over or under its current fair market value, he could make appropriate adjustments, either by way of refund if the property were overassessed, or in the form of additional tax billings, called escape assessments, if the property were underassessed. (§§ 469, 531, 533; *Bauer-Schweitzer Malting Co.* v. *City and County of San Francisco* (1973) 8 Cal.3d 942 [106 Cal.Rptr. 643, 506 P.2d 1019].) These refunds or escape assessments could be issued for as many years, usually four, as permitted by the specific statutes. (§§ 532, 4831.)

(b) This section does not prohibit the filing of an application for appeal where a new value was placed on the roll pursuant to Section 51. [¶] (c) An application for equalization made pursuant to Section 620 or Section 1605 when determined, shall be conclusively presumed to be the base-year value in the same manner as provided herein." (Italics added to indicate subsections on which the trial court relied to find Sea World precluded from seeking a refund in this case.)

[8]It appears that the judgment was entered twice; once based on the trial court's signed order denying the motion on November 10, 1992, and again on November 12, 1992, after the court signed a separate order for judgment in County's favor.

[9]The standard is the same whether we review the matter as a grant of summary judgment or a trial upon stipulated facts. (*Milo Equipment Corp.* v. *Elsinore Valley Mun. Water Dist.* (1988) 205 Cal.App.3d 1282 [253 Cal.Rptr. 126]; *Jongepier* v. *Lopez, supra,* 142 Cal.App.3d at p. 538.)

Article XIII A changed the standard for determining the "full value" of real property, limiting it to the lower of fair market value or the property's "base year value," which was defined by the assessor's valuation of the property on the 1975-1976 tax bill or the fair market value as determined under previous law on the date of new purchase, new construction or change of ownership. (Art. XIII A, § 2, subd. (a); §§ 110, 110.1; see *ante*, fn. 1 at p. 1392.)[10] Subsequent increases in the base year value once established were limited to a maximum of 2 percent per year. (Art. XIII A, § 2, subd. (b); §§ 51, 110.1, subd. (f).) Appropriate adjustments to the current roll values continued by way of escape assessments and refunds.

Commencing with the 1983-1984 assessment year, whenever a change in ownership occurs, the assessor appraises the property changing ownership at its full cash value on the date of the ownership change. (§ 75.10, subd. (a).) This value then becomes "the new base value of the property. . . ." (§ 75.10, subd. (a).) "If the change in ownership occurs . . . on or after June 1 but before the succeeding March 1, then the supplemental assessment placed on the supplemental roll shall be the difference between the new base year value and the taxable value on the current roll." (§ 75.11, subd. (b).)

The assessor then must send a notice to the taxpayer showing the new base year value, the current roll taxable value, the date of change, the amount of supplemental assessments, any exempt amount, the date the notice was mailed, a statement the supplemental assessment was determined in accordance with article XIII A and advisement of the time for filing claims for exemption and for appeal through use of the equalization process.[11] (§ 75.31, subds. (a), (b), & (c).)

Property owners have four years within which to appeal a new base year value determination by filing an application for reduction with the Board. (§§ 75.31, subd. (c), 80, subd. (a)(3), 1603, 1605.) A property owner who has received a supplemental assessment or other assessment outside the regular assessment period must file his application for reduction or appeal "no later than 60 days after the date on which the assessee was notified[,

[10]Section 110.1 provides, in part: "(a) For purposes of subdivision (a) of Section 2 of Article XIII A[,] 'full cash value' of real property, including possessory interests in real property, means the fair market value as determined pursuant to Section 110 for either of the following: [¶] (1) The 1975 lien date. [¶] (2) For property which is purchased, is newly constructed, or changes ownership after the 1975 lien date, either of the following: [¶] (A) The date on which a purchase or change in ownership occurs. [¶] (B) The date on which new construction is completed, and if uncompleted, on the lien date. [¶] (b) The value determined under subdivision (a) shall be known as the base year value for the property."

[11]If the supplemental assessment is a negative amount, the notice will also advise the property owner that the auditor will make a refund of a portion of the taxes paid. (§ 75.31, subd. (e) [the 1992 amendment redesignated this subdivision as (f)].)

unless t]he board of supervisors of any county may by resolution require that the application for reduction pursuant to subdivision (a) of Section 1603 be filed with the clerk no later than 60 days after the date of the mailing of the tax bill." (§ 1605, subds. (b) and (c), amended by Stats. 1990, ch. 126, § 14, eff. June 11, 1990.)[12] If the application results in a reduction in the base year value, that value becomes the new base year value and the taxpayer may seek a refund of taxes paid. (§§ 5097, 5097.2.)

Aside from the statutory avenues of appeal provided the taxpayer to challenge the assessor's valuation of a base year value, i.e., via the equalization process, the Legislature provided the assessor with authorization to correct certain base year values. Section 110.1, subdivision (c) gave the assessor until June 30, 1980, to correct any of the 1975 base year values (by reassessing the property) and to levy any appropriate escape assessments. Until 1988, however, the Legislature had provided no guidelines to assessors for correcting post-1975 base year values found incorrect due to a change of ownership or new construction. (SBE, Analysis of Sen. Bill No. 587 (Aug. 31, 1987).) On January 1 that year, section 51.5 became effective and permitted assessors to correct on discovery any base year values or error which did not involve the exercise of the assessor's judgment. (§ 51.5, subd. (a).) While in such cases no limitations period was set in which the assessor could revise the base year values, section 51.5 provided any correction due to an assessor's value judgment must be made "within four years after July 1 of the assessment year for which the base year value was first established."[13] (§ 51.5, subd. (b).) Errors or omissions resulting from taxpayer fraud, concealment, misrepresentation or failure to furnish information, or errors by the assessor which "resulted in a base year value that was not intended by the assessor at the time it was determined . . ." were expressly excluded from the four-year limitations period. (§ 51.5, subd. (f)(2).)

---

[12]Application for reduction in a current roll assessment must be filed within the time period "beginning July 2 and continuing through and including September 15." (§ 1603, subd. (b).)

[13]The legislative analysis for Senate Bill No. 587 reveals it was drafted in response to *Dreyer's Grand Ice Cream, Inc.* v. *County of Alameda* (1986) 178 Cal.App.3d 1174 [224 Cal.Rptr. 285], which determined the assessor could not correct a post-1975 base year value where the correction was made more than four years after March 1 of the year for which the base year value was established. While *Dreyer's* concerned an error in an assessor's value judgment concerning a base year value, the Legislature wanted to clarify other types of corrections and the differences between escape assessments applying to property which was underassessed and that which had totally escaped assessment. (SBE, Analysis of Sen. Bill No. 587, *supra.*) "In view of the serious interpretational questions raised by the *Dreyer's* decision, it is necessary for the Legislature to adopt clear guidelines for the correction of post-1975 base year values and to restore the statutory meaning of the terms used in the escape assessment provisions." (*Ibid.*; see also *Blackwell Homes* v. *County of Santa Clara* (1991) 226 Cal.App.3d 1009, 1014-1016 [277 Cal.Rptr. 251].) The four-year limit on corrections of error involving an assessor's value judgment in section 51.5 is consistent with the *Dreyer's* decision. (*Ibid.*)

At the same time section 51.5 was added to the Revenue and Taxation Code, section 80 was amended to include a subdivision referring to base year value corrections made by the assessor under section 51.5 to guarantee "that a taxpayer whose base-year value has been corrected will have four years in which to challenge the revised base-year value through the local equalization process." (SBE, Analysis of Sen. Bill No. 587, *supra*, see Stats. 1987, ch. 537, §§ 2, 3.) Thus, whenever a base year value is corrected by the assessor, the taxpayer will have, as in the case of a base year value change in an assessment or supplemental assessment, four years following that correction in which to challenge it consistent with section 80. (§ 80, subd. (a)(5).) Similarly, if the correction results in a reduction in the base year value, the taxpayer may seek a refund of taxes paid. (§§ 5097, 5097.2.)

■ A reduction in base year value, whether it be the result of an assessment appeal or equalization process, or from an assessor's correction, is distinct from the right to a refund of taxes due to that reduction. (*Osco, supra*, 221 Cal.App.3d at p. 193.) Regardless of how the reduction is made, the resulting adjusted or new base year value is the control figure from which an assessment is determined. (*Ibid.*) The new base year value allows the assessor to determine whether there has been an overassessment or underassessment. Such then may trigger the right of the assessor to levy appropriate escape assessments for taxes owed the County because of an underassessment, or the right of the taxpayer to file an application for an appropriate refund because of an overassessment. (§§ 531.2, 532, 5097, 5097.2; *Osco, supra*, 221 Cal.App.3d at p. 193.) It does not follow, however, that a reduced base year value in one year mandates a similar lowering or correction of earlier years' base values. (*Ibid.*)

The right to a refund of taxes is contained in section 5096 et seq. and provides fairly specific grounds for tax refunds, which must be met before any refund will be granted.[14] (See *Osco, supra*, 221 Cal.App.3d at p. 195; *Chrysler Credit Corp.* v. *Ostly* (1974) 42 Cal.App.3d 663, 680 [117 Cal.Rptr. 167].) Section 5096 provides in pertinent part that "[a]ny taxes paid before or after delinquency shall be refunded if they were: . . . ¶ (b) Erroneously . . . collected."[15] Sections 5097 and 5097.2 provide taxpayers a right to a refund when an application for reduction in assessment has been filed.

---

[14]Before article XIII A, "several statutes provided for tax refunds. The primary effect of article XIII A was to impose a different value standard for assessing property. The article and its enabling statutes did not limit existing law with regard to refunds; however, the refund statutes must be read in conjunction with those statutes allowing reduction in base-year value." (*Osco, supra*, 221 Cal.App.3d at p. 195, fn. 8.)

[15]If a correction is made to a base year value it may or may not change the assessed value. If it does, the corrected assessment will be put on the tax roll for billing and collection. Pursuant to section 4831: "(a) Any error resulting in incorrect entries on the roll may be

Section 5097 states in relevant part: "No order for a refund under this article shall be made, except on a claim: . . . ¶ (2) Filed within four years *after making of the payment sought to be refunded* . . . ¶ (b) An application for a reduction in an assessment filed pursuant to Section 1603 shall also constitute a sufficient claim for refund under this section if the applicant states in the application that the application is intended to constitute a claim for refund. If the applicant does not so state, *he or she may thereafter and within the period provided in paragraph (2) of subdivision (a) file a separate claim for refund of taxes extended on the assessment which applicant applied to have reduced pursuant to Section 1603* or Section 1604." (Italics added.) Nothwithstanding sections 5096 and 5097, section 5097.2[16] permits a refund within four years of payment "if the amount paid exceeds the amount due on the property *as the result of a reduction attributable to a hearing before an assessment appeals board.*" (*Osco, supra*, 221 Cal.App.3d at p. 196, italics added.)

## B. *Application of Statutory Scheme to This Case*

Here, Sea World's real estate improvements were assessed as of the date of change in ownership in 1989. This new base value was reflected in the supplemental assessment for 1989 sent to Sea World. Under section 75.31, subdivision (c),[17] Sea World had 60 days from "the date of the notice" to file an appeal or for equalization of this new base year value as provided in section 1605, by filing an application for such under section 1603. Pursuant to section 5097, subdivision (b), this same application would also constitute a "sufficient claim for refund" if it so stated. Sea World's application did so state.

However, the notice of supplemental assessment was dated "06-22-90" (June 22, 1990). To be timely under the existing limitations period, the application for appeal or equalization of this supplemental assessment had to be filed no later than August 22, 1990. It was filed on September 24, 1990. Therefore, under the specific statutes governing appeals of supplemental assessments and claims for refunds brought on the basis of a reduced value

corrected . . . at any time after the roll is delivered to the auditor but shall be made within four years after the making of the assessment which is being corrected. This section does not apply to . . . ¶ (1) Errors involving the exercise of value judgments."

[16]Section 5097.2 provides in part: "Notwithstanding Sections 5096 and 5097, any taxes paid before or after delinquency may be refunded by the county tax collector or the county auditor, within four years after the date of payment, if: . . . ¶ (e) The amount paid exceeds the amount due on the property as a result of a reduction attributable to a hearing before an assessment appeals board or an assessment hearing officer."

[17]Section 75.31, subdivisions (c) and (d) were amended effective June 11, 1990, to provide an expanded limitations period for the timely filing of an appeal or application of equalization to correspond with the changes in section 1605, subdivision (c). (See *ante*, fn. 6.)

through the assessment equalization or appeal process, the application and claim were untimely. (§§ 5097, subd. (b), 5097.2, subd. (e).)

### C. The Section 51.5 Arguments

■ Sea World attempts to get around this "failure to exhaust its administrative remedies" by asserting section 51.5 mandates the County assessor to "correct" the 1989 supplemental assessment with the new base value the Board determined was "correct" for Sea World's 1990 assessment and to refund the excess taxes it paid. Sea World's argument goes something like this: because the Board found the assessor had incorrectly determined the value of its improvements on the lien date of March 1, 1990, based on the information of their acquisition on November 30, 1989, and their fair market value, the supplemental assessment value based on the November 30, 1989, change of ownership was likewise incorrect. Because this error was discovered by the assessor within four years after the first establishment of the base year value through the 1990 equalization process, subsection (d) of section 51.5 requires a refund of overpaid taxes based upon this error in the supplemental assessment, which has now impliedly been "otherwise corrected" by the 1990 Board decision. For support of its claim, Sea World cites to the legislative history of section 51.5 and letters from the SBE to county assessors concerning that section as providing the taxpayer with an equitable remedy for errors in base year valuations separate and independent of the remedies provided in section 80. Sea World thus contends section 51.5 requires the assessor to correct the 1989 base value on the supplemental assessment and refund the excess taxes Sea World paid regardless of the untimeliness of its claim and the prospective only effect of section 80. (§ 80, subd. (a)(5); see *Osco, supra,* 221 Cal.App.3d at p. 196.) We conclude Sea World's interpretation of section 51.5 is incorrect.

■ Generally, in interpreting statutes assessing and levying taxes, a court " 'may not extend [the statutory] provisions, by implication, beyond the clear import of the language used, nor enlarge upon their operation so as to embrace matters not specifically included.' " (*Cal. Motor etc. Co.* v. *State Bd. of Equal.* (1947) 31 Cal.2d 217, 223 [187 P.2d 745].) The court is "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." (Code Civ. Proc., § 1858.) Thus, if a statute is clear, the "plain meaning" rule applies; the Legislature is presumed to have meant what it said. (*Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].) A statute's provisions " 'are to be construed

according to the fair import of their terms, with a view to effect its objects and to promote justice.' " (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 487 [134 Cal.Rptr. 630, 556 P.2d 1081].) Thus any "specific provision should be construed with reference to the entire statutory scheme of which it is a part, . . ." (*Id.* at p. 489.) As we noted in *Pueblos Del Rio South* v. *City of San Diego* (1989) 209 Cal.App.3d 893 [257 Cal.Rptr. 578]: " 'When used in a statute[, words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citation.] 'Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole.' [Citation.]" (*Id.* at p. 905.)

 Using these rules here, we conclude that although section 51.5 provides a procedure separate from section 80 for the correction of errors in base year values, that section, enacted to provide guidelines for county assessors in making base year value corrections, when viewed with the entire statutory scheme of which it is a part, does not override the prospective only application of section 80, subdivision (a)(5) for a reduced base year value determined as a result of a successful taxpayer's application for the reduction of such value. (See *Osco, supra,* 221 Cal.App.3d 189.)

As the court in *Osco* stated: " '[T]he intent of the Legislature is the end and aim of all statutory construction [citations] . . . .' [Citation.] A report issued by the Assembly Revenue and Taxation Committee set forth the following example in its analysis of assessment appeals: '[I]f a taxpayer wishes to appeal as too high a base value established in 1980, the last year in which to make such an appeal would be 1984; if successful, the change would be effective for 1984-85 and *thereafter* . . . .' [Citation.] ¶ The Legislature's intent is clearly expressed in section 80[.] Subdivision (a)(5) provides that any reduction in assessment made as a result of a reduction in base-year value shall apply for the assessment year in which the appeal is taken and prosectively thereafter[.]" (*Osco, supra,* 221 Cal.App.3d at p. 194, fns. omitted, original italics.) Thus the court in *Osco* found the effect of section 80 was "to reduce base-year values effective only in the year or years in which the taxpayer applied for a reduction, and prospectively thereafter[.]" (*Id.* at p. 195, fn. omitted.) Since Sea World timely applied for reduction of the 1990 base year value, its success in obtaining a lower adjusted base year value applies for the 1990 assessment year and following years only. (*Ibid.*)

Although section 51.5 was enacted after the initiation of the lawsuit in *Osco,* we do not find that its language, when read in light of the legislative analysis for its enactment and subsequent amendment, and the fact section

80 was amended to include any base year value determined under it (§ 51.5) at the time it was enacted (§ 80, subd. (a)(4)), supports Sea World's assertion the 1990 determination constituted a "correction" of the 1989 supplemental assessment, which would then entitle Sea World to an automatic refund.

In enacting section 51.5, the Legislature stated that it: "[F]inds and declares that fairness and equity require that county assessors have express authority to make corrections to property tax base-year values whenever it is discovered that a base-year value does not reflect applicable constitutional or statutory valuation standards or the base-year value was omitted. Any limitations imposed upon the assessor's authority to correct these errors would result in a system of taxation which, on the one hand, denies the benefits of Article XIII A of the California Constitution to some taxpayers where the barred error or correction would reduce the base-year value and, on the other hand, encourages even the most honest person to engage in deception and concealment in order to delay discovery of changes in ownership or new construction beyond the point where a correction of the base-year value can be made. Further, the failure to place any value on the assessment roll for property which completely escapes taxation because of limitations on the authority to correct errors would violate the constitutional requirement that all property in the state shall be subject to taxation." (Stats. 1987, ch. 537, § 1, subd. (a).)

Subdivision (a) of section 51.5 provides that error or omission in a base year value which does not involve an assessor's judgment shall be corrected "in any assessment year in which the error or omission is discovered." Subdivision (b) of section 51.5, on which Sea World relies, provides that "[a]n error or an omission described in subdivision (a) which involves the exercise of an assessor's judgment as to value may be corrected only if it is placed on the current roll or roll being prepared, or is otherwise corrected, within four years after July 1 of the assessment year for which the base year value was first established."[18] Subdivision (d) of section 51.5 provides that if a correction is made by the assessor under subdivisions (a) or (b) and such correction reduces the base year value, then *appropriate* cancellations or *refunds of tax* shall be granted *in accordance with this division*."[19] (Italics added.) Section 80, subdivision (a)(4) provides that a base year value

[18]As noted earlier, the insertion of the language "or is otherwise corrected" by the 1990 amendment to section 51.5, subdivision (b) was to clarify the four-year statute of limitations for corrections made outside the current roll or roll being prepared. (See *ante*, fn. 6.) A supplemental assessment, made outside the current roll by the assessor based on a correction, would fall under this subsection of section 51.5.

[19]By its own language, subdivision (d) of section 51.5 only allows appropriate refunds of tax in accordance with the existing tax refund statutes. (See *Osco, supra*, 221 Cal.App.3d at p. 195, fn. 9.) It does not by itself provide for automatic tax refunds.

determined under section 51.5 is conclusive of the base year value unless it is timely challenged. If so challenged, the new base value determined as a result of that challenge is conclusively presumed to be the base year value for that assessment. Section 80, subdivision (a)(5) provides that any reduction in assessment made because of an assessment appeal or base year value challenge applies for the year in which the appeal or challenge was made and in the following years, i.e., prospectively thereafter.

From reading the plain language of sections 51.5 and 80, in light of the stated legislative intent, we glean that a downward adjustment in base year value as the result of an application for a reduction challenging an assessment or supplemental assessment based on an assessor's value judgment is not the same thing as a correction based on an error or omission in the assessor's value judgment determined without the filing of an application for reduction.

SBE letters to assessors concerning both sections, that were admitted into evidence in this case, although not binding on us, provide some support for this interpretation.[20] (*Ontario Community Foundations, Inc.* v. *State Bd. of Equalization* (1984) 35 Cal.3d 811, 816 [201 Cal.Rptr. 165, 678 P.2d 378].) In the letters SBE takes the position section 51.5 is independent of the assessment appeal provisions, noting the assessor must correct any error or omission in the determination of a base year value when he discovers it and "[t]he assessment appeals provisions apply only when there is a dispute between the taxpayer and the assessor as to the proper level of the base-year value and, as required in . . . Section 80, an application for reduction in base-year value is filed." (SBE Letter to County Assessors, *supra*, No. 89/34.) They also note that "[r]eductions in assessments under Section 80 apply for the assessment year in which the appeal is taken and prospectively thereafter." (SBE Letter to County Assessors, *supra*, No. 91/53.)

In addition to reflecting that section 80 is a separate procedure for use by taxpayers, while section 51.5 is for use by assessors, the SBE letters also emphasize that the base year value, however derived, is a "control figure," which if changed "does not necessarily result in a change in the taxable or assessed value of the property."[21] (SBE Letter to County Assessors, *supra*, No. 89/34.) Thus even assuming the assessor had corrected the 1989 base

---

[20]SBE Letters to County Assessors Nos. 89/34, Base-Year Value Corrections (Apr. 7, 1989), 90/03, Proposition 58 (Jan. 10, 1990), and 91/53, Refunds Resulting From Base Year Value Corrections (July 16, 1991), were stipulated by the parties below as information the trial court could consider in determining the issues before it.

[21]In Letter No. 89/34, SBE stresses "the correction of a base-year value is not the same thing as a change in taxable or assessed value or a change in the value reflected on the roll." (*Ibid.*) Section 51.5 "does not by itself authorize roll corrections. Rather, it describes

year value in this case because of a judgment valuation error, such correction would not have necessarily required the assessor to correct the assessment for that year. (See *Osco, supra*, 221 Cal.App.3d at p. 193.)

Although the letters also arguably provide some support for Sea World's position, it is our duty and not that of the SBE to construe the true meaning of section 51.5 and its interplay with section 80 and to harmonize it with the entire statutory scheme of which it is a part.[22] (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 917, fn. 15 [80 Cal.Rptr. 89, 458 P.2d 33].)

As the legislative analysis to section 51.5 points out, it is only common sense to conclude that a taxpayer will challenge an assessment or supplemental assessment when he thinks the value is too high, not when it is too low or the value is agreed upon. Thus it follows that in the case of a correction by the assessor which results in a lower base year value and subsequently in a lower assessment and assessment bill for taxes, a taxpayer would not apply to challenge that value unless he thought that lower corrected value was still too high. Under section 80, subdivision (a)(4), however, either the corrected value the assessor assigned to the property under section 51.5 or the reduced value of that corrected value through the assessment appeals process would then become the new base value for that assessment.

Because the Legislature did not alter the prospective application of section 80, subdivision (a)(5) when it enacted section 51.5 and amended section 80 to include base year values determined via an assessor's correction under section 51.5 which is then appealed (§ 80, subd. (a)(4)), we can only conclude that that section still means what it says: "Any reduction in assessment made as the result of an appeal under this section shall apply for the assessment year in which the appeal is taken and prospectively thereafter." (See *Osco, supra*, 221 Cal.App.3d at p. 194.)

However, because the Legislature did not provide for the prospective or retroactive application of a section 51.5 correction which is not challenged

procedures which may in some cases result in roll corrections to be made under existing statutes." (SBE Letter to County Assessors, *supra*, No. 89/34.)

[22]One SBE letter states section 51.5 requires the assessor refund taxes paid in cases where a correction reduces the base year value when taxes have been paid on the erroneous base year value "whether the error involves the assessor's value judgment or not." (SBE Letter to County Assessors, *supra*, No. 91/53.) That same letter, however, also notes the "mandate" to refund taxes is based upon the correction being "placed on the assessment roll within four years after July 1 of the assessment year for which the base year was first established." (*Ibid.*) But, as we have seen in footnote 15, a correction to a tax roll under section 4831 does not apply to errors involving the exercise of value judgment.

under section 80, and that section provides such unchallenged correction is "conclusively presumed to be the base-year" unless appealed (§ 80, subd. (a)(4)), subdivision (a)(5) by its express language does not apply to such correction. This conclusion is consistent with our analysis that corrections of a base year value by the assessor are not the same thing as a reduction due to an assessment appeal, although they may have the same effect in determining whether there has been an overassessment or underassessment. This distinction, however, does not assist Sea World in this case.

Sea World would have us bootstrap the reduced base year value determined via its 1990 assessment appeal to the 1989 supplemental assessment as a "correction" under section 51.5 even though the express terms of section 80 preclude such action. (§ 80, subds. (a)(3), (a)(5), (c).) The reduction attributable to the 1990 hearing on Sea World's application to reduce that base year value, even though not appealed, simply applies to the 1990 assessment period and beyond, and does not relate back to the 1989 assessment untimely challenged. (*Osco, supra,* 221 Cal.App.3d at p. 196.) The fact that the Board's decision in lowering the base year value on the 1990 assessment was not appealed by County does not alone change it into an uncontested determination or a concession by the assessor of error or omission in his value judgment exercised in the 1989 supplemental assessment.

Sea World argues it is still entitled to a refund because its claim was filed and denied within four years of the implied correction to the 1989 base year value. Sea World, however, conceded it did not file a timely application for reduction of the 1989 supplemental assessment. Even if we construed the matter as Sea World would have us, i.e., that it independently had four years under section 51.5, subdivision (d) in which to file a claim after the "implied correction" of the 1989 supplemental assessment based on the 1990 appeal determination, that claim would have had to be filed "after making of the payment sought to be refunded . . ." in order to be considered (§ 5097, subd. (a)(2)), and would have had to state a proper ground for a refund other than the 1990 base year value reduction. (§§ 5096, 5142, subd. (a).) Since Sea World did not file a separate claim for refund after it paid the supplemental taxes (in November 1990 and April 1991) and the rejected claim which it filed was grounded upon its application for reduction of the 1989 supplemental assessment based on the 1990 reduction, its claim is inherently flawed as untimely.[23]

---

[23]To the extent Sea World may argue it could still file an independent claim based on section 5096, subdivision (b) for taxes erroneously collected, we merely comment, as we already have, that before it can be determined that taxes have erroneously been collected, the

*D. Equitable Arguments*

As it did below, Sea World further argues on appeal that the equitable powers of this court should be exercised to excuse the untimeliness of the claim in this case because the strict time limit of 60 days from the notice under section 1605, subdivision (b) was subsequently amended by resolution passed by the Supervisors to allow applications filed after January 1, 1991, to be timely if filed within 60 days after the mailing of the supplemental tax bill. (See *ante,* fn. 6.) Citing *Focus Cable of Oakland, Inc.* v. *County of Alameda* (1985) 173 Cal.App.3d 519 [219 Cal.Rptr. 95] *(Focus)* and *Bendix Corp.* v. *City of Los Angeles* (1984) 150 Cal.App.3d 921 [198 Cal.Rptr. 370] *(Bendix),* Sea World also asserts we must exercise our powers to correct the overassessment in the 1989 supplemental assessment because there is no question about the value of the improvements since the 1990 determination conclusively found the error and such should "relate back" to the 1989 base year value.[24] Sea World contends it would not prejudice the assessor in this case to provide a longer appeals period.

Sea World, however, fails to appreciate that the right to a refund is strictly statutory and that the facts in this case are fully distinguishable from those in *Focus* and *Bendix.* Unlike in *Focus,* this case did concern a valuation dispute between the assessor and the taxpayer, sections 51.5 and 80 were at issue and the 1989 supplemental assessment was not a "nullity as a matter of law." (See *Focus, supra,* 173 Cal.App.3d at pp. 527-528.) Nor has Sea World presented the type of unique facts that were involved in *Bendix* to envoke application of the "relation-back" doctrine to toll a limitations period. *(Bendix, supra,* 150 Cal.App.3d at pp. 924-926.)

We decline to exercise our equitable powers where the Legislature has spoken and provided a taxpayer with specific legal remedies for claiming a tax refund for overpayment of taxes conditioned upon the taxpayer fulfilling certain requirements, when the taxpayer fails to meet those conditions. (See

---

roll must be corrected to reflect the error under section 4831 and that section does not apply to errors involving the exercise of an assessor's value judgment. That section, added to the Revenue and Taxation Code in 1939, although amended numerous times, and two times since the enactment of section 51.5, has not been changed to include errors involving the exercise of the assessor's value judgment. (Stats. 1939, ch. 154, § 4831, p. 1362, amended by numerous statutes, including Stats. 1988, ch. 830, § 25 and Stats. 1991, ch. 532, § 35; see *ante,* fns. 15 and 22.)

[24]A 1992 amendment to section 1605, subdivision (b) provides a 12-month limitation for the filing of an application for reduction in a supplemental assessment if the party affected and the assessor stipulate that there is an error in the assessment as a result of the assessor's exercise in judgment in determining the full cash value and a written stipulation as to such is filed pursuant to section 1607. (Stats. 1992, ch. 523, § 9.5.) No such stipulation was entered here.

*Sierra Investment Corp.* v. *County of Sacramento* (1967) 252 Cal.App.2d 339, 346 [60 Cal.Rptr. 519].)

## E. Constitutional Claims

Finally, Sea World contends that by not refunding the erroneous amount of the 1989 supplemental taxes Sea World paid, the County violates the clear constitutional mandate contained in article XIII to uniformly assess, levy and collect taxes on the full value of property in California.[25] Sea World has failed to show any lack of uniformity in the assessment system. Any claimed lack of uniformity in this case is due to Sea World's own failure to comply with the requirements of the system.

Sea World's reliance on *Bauer-Schweitzer Malting Co.* v. *City and County of San Francisco, supra,* 8 Cal.3d 942 and *Ex-Cell-O Corp.* v. *County of Alameda* (1973) 32 Cal.App.3d 135 [107 Cal.Rptr. 839] is unfounded. Those cases involved criminal action on the part of the assessor and faulty information provided by the taxpayer, respectively. Neither situation exists in this case. No constitutional error has been shown.

### DISPOSITION

The judgment is affirmed. County is to recover its costs.

Work, Acting P. J., and Nares, J., concurred.

---

[25]Article XIII, section 1, subdivision (b) provides that all property will be assessed according to its full value. To the extent Sea World is arguing this article requires automatic refunds when an overassessment is identified, such claim has been addressed and refuted by us in footnote 19 and also by the court in *Osco.* (*Osco, supra,* 221 Cal.App.3d at pp. 193-194, fn. 4; see *ante,* fn. 19.)