Filed 2/5/14  Hachigian v. Gilbert CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| MICHAEL HACHIGIAN, | B244195 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BC445673) |
| PAUL K. GILBERT, | |
| Defendant and Respondent. | |

APPEAL from judgment of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge.  Reversed and remanded.

Michael Hachigian in pro per, for Plaintiff and Appellant.

Brandmeyer & Packer, Robert B. Packer and Paul M. Corson for Defendant and Respondent.

_____

Michael Hachigian appeals from the judgment entered upon a jury verdict in favor of respondent Paul K. Gilbert on Hachigian's complaint for medical malpractice and an order sustaining without leave to amend Gilbert's demurrer to his fraud cause of action. The jury found that Gilbert was not negligent in his care and treatment of Hachigian's left knee pain. Hachigian asserts several errors on appeal: (1) the trial court erred in sustaining the demurrer to the fraud cause of action without leave to amend; (2) exhibits consisting of x-rays were improperly omitted from a minute order and erroneously not presented to the jury during deliberations; (3) deposition testimony was improperly excluded; (4) Hachigian's expert witness was improperly barred from presenting testimony on damages; and (5) Hachigian was improperly barred from testifying to damages. As we shall explain, except the contention regarding the demurrer all of Hachigian's contentions on appeal are without merit. Accordingly, we reverse for further proceedings on only the fraud cause of action.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

*1. Hachigian's Knee Pain and Subsequent Treatment*

Sometime in 2003 or 2004, Hachigian began experiencing pain in both of his knees. After seeing several doctors and undergoing numerous non-surgical treatments, Hachigian decided that surgery would be necessary to address the pain. Through independent online research, Hachigian learned of a type of knee surgery referred to as unicompartmental knee replacement. Unicompartmental knee replacement, as opposed to a total knee replacement, is considered a less invasive surgery as it only involves resurfacing one of the knee's three compartments. During the surgery, deteriorated portions of the affected compartment are cut away, and the surgeon implants an artificial component in the patient's knee. Some surgeons employ robotics to assist in this procedure. Based on his research, Hachigian thought that unicompartmental knee replacement surgery, particularly robot-assisted surgery, "sounded like a great idea." Ultimately, Hachigian discovered through his research that the Dorr Arthritis Institute performed robot-assisted unicompartmental replacement surgery.

Hachigian first met with respondent Paul Gilbert, M.D. on July 7, 2009. Gilbert ordered x-rays of Hachigian's knees, examined Hachigian's medical history, and conducted a physical examination of Hachigian. Gilbert concluded that unicompartmental knee replacement was indicated for Hachigian's left knee. Gilbert expressed this opinion to Hachigian. Prior to surgery, Gilbert and Hachigian discussed the pros and cons of unicompartmental knee replacement in Hachigian's case. Hachigian consented to a total knee replacement surgery if during the surgery Gilbert's opinion changed, and Gilbert concluded that total knee replacement was necessary.

On July 27, 2009, Gilbert performed unicompartmental knee replacement surgery on Hachigian's left knee. During the surgery, Gilbert concluded that unicompartmental, knee replacement was still the appropriate course of treatment for Hachigian's left knee because the cartilage beneath Hachigian's knee cap was not deteriorated such that a full replacement was unwarranted. Before the surgery concluded, Gilbert put Hachigian's knee through a range of motion test. Gilbert believed the alignment of the components were "within acceptable limits" and that he "accomplished what [he] wanted to accomplish."

Hachigian met with Gilbert again for a follow up visit on September 29, 2009. At the appointment, Hachigian expressed that he still had some left knee pain, though it is not clear if it was less severe than before surgery. Hachigian was not taking pain medication, had regained his range of motion, was walking with a normal gait, and had resumed light exercise. Gilbert provided Hachigian with a copy of the post-operative x-ray upon Hachigian's request. After the appointment, Gilbert was left with the impression that the surgery had relieved some of Hachigian's pain and that Hachigian was pleased with the results.

Hachigian followed up with Gilbert for a second time on February 5, 2010. At this appointment, Hachigian complained that he felt the same as he did prior to the surgery. However, his gait was still normal and he exhibited good range of motion. According to Gilbert, x-rays taken at this juncture showed "suboptimal placement" of the components in Hachigian's knee, but such placement would affect only the life of the

3

component, not Hachigian's pain levels. Gilbert advised Hachigian to "hang in there" and wait to see if a revision surgery would be necessary. This was Hachigian's last visit with Gilbert.

Subsequently, Hachigian met with Lawrence Dorr, M.D. of the Dorr Arthritis Institute on February 11, 2010. It is unclear precisely what occurred during this appointment.

On April 21, 2010, Hachigian saw Brad Penenberg, M.D., an orthopedic surgeon, for treatment of his right knee pain. Pennenberg did not record any findings with regards to Hachigian's left knee. Shortly thereafter, Penenberg performed a total knee replacement on Hachigian's right knee. Penenberg rendered no treatment on Hachigian's left knee.

### 2. *The Complaint and Pre-trial Motions*

Hachigian filed a complaint against Dr. Gilbert and a number of Does alleging three causes of action: medical malpractice, fraud and misrepresentation, and defective medical equipment.[1] Included in the allegations, Hachigian alleged: (1) "[Gilbert] advised Plaintiff that he was a very good candidate for '[u]nicompartmental knee surgery;'" (2) "the [unicompartmental] surgery was not the proper corrective surgery for his medical problems;" (3) that Gilbert knew "plaintiff was not a proper candidate for unicompartmental joint replacement;" (4) that Gilbert "made said fraudulent representations with the intent to have them believed and relied upon by Plaintiff and to specifically damage the Plaintiff;" (5) "Plaintiff relied on the representations and promises of Defendant;" and (6) "as a proximate result of said Defendant's misrepresentations, fraud and deceit and the fact herein alleged, Plaintiff has incurred considerable damages."

---

[1] Defective medical equipment was alleged only against the Does and not against Gilbert.

In response, Gilbert filed a demurrer to the fraud and misrepresentation count on the grounds that it was not pleaded with the requisite particularity. The trial court sustained the demurrer without leave to amend and granted a motion to strike.

Gilbert also filed a motion in limine to limit testimony of expert witnesses to opinions testified to during deposition, pursuant to Code of Civil Procedure section 2034 and *Kennemur v. State of California* (1982) 133 Cal.App.3d 907 ("Kennemur Motion").

3.      *The Trial*

The medical malpractice cause of action proceeded to trial. Hachigian offered Steven R. Graboff, M.D. as an expert witness. Dr. Graboff testified that a patient is a candidate for unicompartmental replacement surgery only if one, and only one, of the knee's three compartments is arthritic. He further opined that a post-operative x-ray of Hachigian's left knee taken on July 27, 2009, demonstrated "malalignment" of the components in Hachigian's knee.

In addition, Dr. Graboff provided some testimony as to the future cost of revision surgery on his left knee. Gilbert objected to this line of questioning on the grounds that during his deposition Dr. Graboff testified that he did not "make any recommendations for future care of [Hachigian]" and therefore did not opine about future cost of revision. The court agreed, stating that although Dr. Graboff may be qualified as expert with regards to the cost of revision surgery, Hachigian did not offer him in that capacity. Accordingly, the court struck Dr. Graboff's testimony regarding future cost of revision surgery.

Hachigian also sought to submit a summary of his Medicare insurance premiums to prove damages. The court permitted Hachigian to do so provided that he modified the bill to omit extraneous charges unrelated to his left knee. The court admitted a modified copy of the summary of insurance into evidence.[2]

---

[2]      Hachigian contends that he sought to incorporate costs of the right knee surgery performed by Dr. Pennenberg in the summary but was precluded by the court's order. He has not provided this court with information about which costs were listed on the

During Hachigian's testimony, he sought to introduce the deposition testimony of Dr. Dorr.[3] Hachigian asserted that such action was necessary because Dr. Dorr's attorney assured Hachigian that Dr. Dorr would be available to testify at trial, but when Hachigian sent a process server to Dr. Dorr's house to subpoena him, a neighbor informed him that Dr. Dorr was "on vacation." The court instructed Hachigian to call Dr. Dorr on the telephone outside the presence of the jury, but the record on appeal does not reflect the outcome of that contact, if any. Ultimately, the court denied the admission of Dr. Dorr's testimony, stating that it did not "hear a basis for admission."[4]

Gilbert twice objected to the submission of any x-rays or MRIs to the jury room; first, at a sidebar held during Dr. Graboff's testimony, and second, while the court and parties discussed the exhibits following the conclusion of respondent's case. Gilbert expressed a concern that the submission of the x-rays to the jury room would lead to the jury "playing radiologist" when experts had already been permitted to testify to and interpret the films. Hachigian worried that jurors would not be able to see the x-ray clearly enough to develop an opinion unless the films were submitted to the jury room. He based his argument on a note from one juror who commented that she was having trouble seeing the film from the jury box. The court concurred in Gilbert's reasoning and stated that to address Hachigian's concerns it would permit the jury to approach the exhibit for a better view. The court instructed the jury to "raise your hand. . . if you think you need a closer look," and it would be allowed an opportunity to approach the exhibit for inspection.

---

summary and ultimately submitted to the jury, nor has our review of the record on appeal brought such details to light.

[3]    The transcript of the deposition is not included in the record on appeal nor otherwise been provided to this court.

[4]    Hachigian states that the court denied the request to admit the deposition as evidence because it was "completely hearsay." Hachigian is taking the court's statement out of context. The court's comment cited by Hachigian is with regards to Dr. Dorr's clinic note, *not* Dr. Dorr's deposition.

On June 22, 2012, the jury returned a special verdict in favor of Gilbert. As to the first question "was defendant. . . negligent in his care and treatment of plaintiff Michael Hachigian," the jury answered "no." Judgment was entered in favor of Gilbert. Hachigian filed this appeal.

## *DISCUSSION*

On appeal Hachigian argues that the trial court committed several reversible errors. He claims: (1) the court erred in sustaining the demurrer to the fraud cause of action without leave to amend; (2) certain exhibits were omitted from the minute order and the post-operative x-rays were improperly withheld from the jury during deliberation;[5] (3) Dr. Dorr's deposition was erroneously excluded; (4) Dr. Graboff should have been permitted to testify to the cost of future corrective surgery; and (5) Hachigian himself should have been allowed to testify to the cost of total right knee replacement surgery. We address these claims in turn.

## I.     The Trial Court Erred In Sustaining The Demurrer.

Hachigian argues that the court erred in sustaining the demurrer to the fraud claim. He is correct.

An actionable fraud claim consists of five elements: (1) a representation; (2) falsity of that representation; (3) knowledge of falsity; (4) intent to deceive; and (5) reliance and resulting damage. (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 710, p. 125.) Unlike most causes of action, every element of a fraud cause of action must be pleaded with particularity. (See *Scafidi v. Western Loan & Bldg. Co.* (1946) 72 Cal.App.2d 550, 553 ["It is essential that the facts and circumstances which constitute the fraud should be set out clearly, concisely, and with sufficient particularity[.]"]) The purpose of the particularity requirement is to apprise the defendant of specifically what allegations to defend against and to allow the court to reject non-meritorious claims. (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197,

---

5       Hachigian asserts the omission from the minute order and withholding the x-rays from the jury room as two separate issues. We will address the issues jointly.

216-217.)  The general rule that pleadings are to be liberally construed in favor of the plaintiff does not apply to fraud.  (*Goldrich v. Natural Y Surgical Specialties, Inc.* (1994) 25 Cal.App.4th 772, 782.)  Nonetheless, knowledge of falsity and intent to deceive are facts that can be pleaded sufficiently through general averments.  (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, §§ 726-730, pp. 142-148.)

In our view the complaint states a cause of action for fraud with sufficient particularity.  The complaint alleges the substance of the representations purportedly made by Gilbert both before and after the surgery, and identifies when those representation were uttered.  The complaint contains allegations that Gilbert intended to deceive and mislead Hachigian into believing that he was a good candidate for the surgery and that the surgery had been successful, that Gilbert knew those representations to be false, and that Hachigian relied on those representations in deciding to undergo the surgery.  He also pleads reliance—that the post-operative representations caused him to delay seeking additional corrective treatment.  These fraud allegations are sufficient to survive a demurrer, and thus, the court erred in sustaining the demurrer to the fraud cause of action.

This conclusion does not end the analysis of the cause of action for fraud, however.  As we shall explain, with respect to fraud claims based on the representation that Hachigian was a good candidate for the unicompartmental knew replacement (the "Good Candidate Representations"), Hachigian cannot demonstrate that the dismissal of the fraud claim resulted in prejudice.   Indeed, it is not enough for an appellant to prove that some error occurred.  We may not set aside a ruling "unless, after an examination of the entire cause, including evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."  (Cal. Const., art. IV, § 13.)  More specifically, we must be convinced that the error complained of caused "substantial injury" to the appellant, and absent the error, a "different result would have been probable."  (Code Civ. Proc., § 475.)  Except in the narrow circumstances where error is reversible per se, the burden rests with the appellant to demonstrate any error was prejudicial.  (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069.)

8

When a complaint contains two different causes of action and the court sustains a demurrer to one cause of action without granting leave to amend and the other cause of action proceeds to trial, the demurrer is not prejudicial if the litigated cause of action subsumes the demurred cause of action. (*McBride v. Poli* (1955) 134 Cal.App.2d 783.) In *McBride*, the plaintiff alleged breach of contract and constructive trust. (*Id.* at p. 791.) The constructive trust count required the appellant to prove the existence of a contract in addition to the existence of a constructive trust. (*Ibid*.) The trial court sustained a general demurrer to the constructive trust count, but the breach of contract cause of action proceeded to trial. (*Ibid*.) Without addressing the merits of the appellant's claim that the demurrer was erroneous, the court concluded that if there had been an error, it was not prejudicial because the plaintiff could not prove the existence of a contract when fully litigating the breach of contract count. (*Ibid.*)

Similarly, Hachigian's medical malpractice cause of action incorporates a material element of his theory of fraud. Medical malpractice or professional negligence is defined in Code of Civil Procedure section 340.5 as follows:

> "'Professional negligence' means a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." (Code Civ. Proc., § 340.5.)

Although fraud does not necessarily subsume medical malpractice in every instance a plaintiff alleges both causes of action, Hachigian's theories resulted in an overlap between material elements for both claims with respect to the Good Candidate Representations. For his fraud cause of action, Hachigian alleged that Gilbert misrepresented that Hachigian was a good candidate for unicompartmental knee replacement. For the medical malpractice cause of action, Hachigian argued that Gilbert performed unicompartmental knee surgery when it was not indicated, and thus did not "render treatment consistent with a proper diagnosis." Under both theories, Hachigian

9

must prove that, at the very least, the unicompartmental knee replacement was not proper to treat his condition. Just as proving the contract in *McBride* was necessary to the potential success of a constructive trust claim, Hachigian could not have succeeded on a fraud claim unless he was able to first prove that respondent was negligent.

Because the medical malpractice count was fully litigated and the jury returned a special verdict that found that Gilbert was not negligent in the treatment and care of Hachigian, the jury effectively found that the treatment rendered was consistent with the diagnosis. In other words, the jury found that it was not unreasonable to conclude that Hachigian was a good candidate for unicompartmental knee replacement surgery. Given this finding, Hachigian could not have succeeded on his fraud claim based on the Good Candidate Representations because Gilbert could not have misrepresented that unicompartmental knee surgery was proper if the surgery was actually indicated. Hachigian has not demonstrated that had the demurrer been overruled a "different result would have been probable" with respect to the Good Candidate Representations. Therefore, the error in sustaining the demurrer as to those representations is not prejudicial.

Nonetheless, this determination does not resolve the *entire* fraud claim. As described elsewhere here, Hachigian's fraud claim was also premised on allegations that Gilbert made certain false representations post-surgery that "the surgery was successful and that everything was fine," and that had Hachigian known the true state of his condition he would have had it "immediately corrected." These post-operative representations were not necessarily subsumed in the malpractice cause of action. Thus, the jury's verdict for Gilbert on the malpractice claim did not necessarily resolve the fraud claim as to the post-operative representations. Consequently, the error in sustaining the demurrer on the fraud cause of action based on these representations resulted in prejudice to Hachigian that warrants reversal. On remand, the parties may conduct further litigation on the fraud claim based on Gilbert's purported post-operative representations as alleged in the complaint.

10

**II.      Any Errors with Regards to the Presentation of the X-Rays Were Harmless.**

Hachigian contends that he was prejudiced when post-operative x-rays were erroneously withheld from the jury room during deliberations.  We disagree.

   A.      *The Omission of the X-rays from the Minute Order Is at Most a Non-reversible Clerical Error.*

Hachigian complains that the minute order does not accurately reflect which exhibits were admitted as evidence.  Specifically, he argues that the post-operative x-rays taken on July 27, 2009 and February 5, 2010 were omitted from the minute order.  As an initial matter, Hachigian failed to bring what he now perceives to be an erroneous omission to the attention of the trial court.  As a result, he cannot now argue that those omissions constitute reversible error.  (See *People v. Saunders* (1993) 5 Cal.4th 580, 589-590 [in general appellate courts do not consider claims of error where an objection could have been, but was not, made in the trial court; such claims are generally forfeited].)  Furthermore, we cannot determine if the omission is actually representative of the trial court's ruling and, therefore, does not constitute any error at all.  In short, Hachigian "bore the burden of affirmatively proving error" by preserving an adequate record, but did not do so.  (*Id.* at p. 62.)  Because Hachigian did not raise the ambiguity with the trial court, the issue must be resolved in favor of Gilbert.

Furthermore, even if the x-rays were admitted as evidence, their omission from the minute order is non-reversible clerical error.  Therefore, "we do not think that a judgment should be reversed or a new trial ordered for what so clearly appears to be a mere clerical error."  (*Stone v. San Francisco Brick Co.* (1910) 13 Cal.App. 203, 206; see also *Del Monte Ranch Dairy v. Bernardo* (1917) 174 Cal. 757 [holding transcription error is not reversible].)  Clerical error is defined as "all errors, mistakes, or omissions which are not the result of the exercise of judicial function."  (*Conservatorship of Tobias* (1989) 208 Cal.App.3d 1031, 1035.)

Given the state of the record and Hachigian's failure to raise the issue with the court, we must assume that the error, if any, was at most merely clerical and does not warrant reversal.

### B. The Record Does Not Show Whether the X-Rays Were Sent to the Jury Room

Hachigian next contends that the jury was entitled to have the complained of x-rays in the jury room during deliberation. However, he has not provided a sufficient record to support his argument.

An appellant has the obligation to provide the court with an adequate record. (*Hotels Nevada v. LA Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348.) In the event an appellant fails to provide an adequate record to support a claim, the issue must be resolved in favor of the respondent. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296.) At numerous points in his brief, Hachigian references in-court events and attributes statements to the trial court but provides no citation to the record to substantiate them. Upon review, it appears that in many of these instances this may be because there is no support within the record for such claims.[6] Simply put, "if it is not in the record, it did not happen." (*Protect Our Water v. County of Merced* (2003) 110 Cal.App.4th 362, 364.)

Hachigian argues that the trial court's statements that "[a]nything that's admitted can be taken in [to the jury room]" and that the jury would be allowed to take the x-rays to the jury room upon request are directly at odds. He believes that "obviously, a jury has no knowledge that they can request an exhibit that is not presented to them for examination in the jury room when they deliberate." Most notably, Hachigian contends that the post-operative x-ray taken of his left knee on the day of the surgery should have

---

[6] For example, Hachigian claims that when sustaining the demurrer without leave to amend, the court stated, "This is a medical malpractice case." Neither the citation Hachigian provided in his brief or our review of the record support this attribution to the court.

12

been sent to the jury room because "it demonstrate[d] how easily it [could] be interpreted by anyone to show the gross misalignment" of the components in his left knee.

Not only is Hachigian's argument unpersuasive, the record does not support it. From the record, all that is clear is that the expert witnesses had the opportunity to testify to and explain the significance of the x-rays. The record does not indicate that the jury requested x-rays during deliberations and they were denied access. Furthermore, Hachigian's argument that an average jury has no knowledge it can request exhibits not immediately furnished to the jury room is without merit. In fact, the proposed CACI "Predeliberation Instructions" inform jurors that they may "ask to see any exhibits admitted into evidence that have not already been provided."[7] (CACI No. 5009.) As Gilbert correctly points out, "it must be assumed the jury understood and followed the instructions given." (*Atkins v. Bisigier* (1971) 16 Cal.App.3d 414, 424.)

As Hachigian concedes, the trial court stated that the jury could ask for the x-rays if they wished to examine them. We cannot determine if the jury ever requested them during deliberation. Therefore, the issue must be resolved in favor of Gilbert.

C. *Even if the X-Rays Were Withheld from the Jury Room, the Decision to Withhold Those Exhibits Was Within the Court's Discretion*

Even if the x-rays were not submitted to the jury during deliberation, such a decision was within the discretion of the court. Trial courts have broad discretion to determine if it is proper to place an exhibit in the jurors' hands during deliberations. (Code Civ. Proc., § 612.) Specifically, Los Angeles Superior Court Rule 3.156 allows the court to withhold evidence from the jury room that "cannot be readily understood by persons without expertise, e.g., *an x-ray*." (Emphasis added.)

---

[7]     We can only speculate as to what instructions were given prior to deliberation because Hachigian failed to provide the actual jury instructions.

13

Los Angeles Superior Court Rule 3.156 provides that the decision is the court's prerogative. In response, Hachigian argues these x-rays are not the kind envisaged by Los Angeles Superior Court Rule 3.156 because they "clearly demonstrated Defendant's misalignment of the components of Plaintiff's knee." Hachigian cites *People v. Williams* for the proposition that photos "show more persuasively than testimony what happened." (*People v. Williams* (1960) 187 Cal.App.2d 355, 366-367.) Hachigian's reliance on *Williams* is misplaced for two reasons. First, *Williams* addressed the propriety of admitting a victim's autopsy photographs in a murder trial. (*Ibid.*) Hachigian's argument erroneously assumes that autopsy photographs and x-rays are analogous. But Hachigian has not convinced us that autopsy photographs require the same technical expertise to interpret as x-rays of a unicompartmental knee replacement surgery. Second, the court in *Williams* was careful to point out in the decision to submit the photos to the jury room was *discretionary*. (*Id.* at p. 367.) Hachigian seems to suggest that because *Williams* found it was within the trial court's discretion to submit the photographs to the jury, therefore the trial court *must* submit such photographs to the jury during deliberation. Hachigian conclusion runs contrary to the concept of discretion. The court in *Williams* issued no opinion as to whether the trial court was under mandate to furnish the photographs to the jury room.

Ultimately, the trial court followed the California Rules of Court. Hachigian has provided no other authority demonstrating that the trial court was under mandate to send the x-rays to the jury room. Therefore, we conclude the trial court did not err.

> D.  *Appellant Has Not Established Any Prejudice Resulting from the*
>     *Withholding of the X-rays from the Jury Room.*

Even if it were an error to withhold the x-rays, Hachigian was not prejudiced. Hachigian argues he was prejudiced because "jurors could not closely view the misalignment by the defendant." Hachigian cites to a complaint from one juror that the "x-ray image was too small to be seen from 20 feet away.

14

However, Hachigian neglects to mention two crucial countervailing considerations. First, the jury was provided an opportunity during trial to approach the x-rays and examine them. Second, both Dr. Graboff and Dr. Klapper testified at length to the substance and significance of the x-rays. Had the x-rays been submitted to the jury during deliberation, it is unlikely that the jury would have reached a different result simply because jurors could hold the x-rays in their hands. The trial court offered no admonitions that precluded the jury from considering the x-rays when rendering its verdict. In sum, even had there been an error in failing to send the x-rays to the jury room, the appellant has not demonstrated prejudice as a result.

## III. The Trial Court Did Not Err in Denying Appellant's Motion to Admit Dr. Dorr's Deposition into Evidence.

Next, Hachigian argues that Dr. Dorr's deposition should have been read into evidence. We disagree.

Hachigian contends that Dr. Dorr's deposition was "critical" to proving the "misalignment errors were committed during the surgery." Again, Hachigian has not produced an adequate record to support his argument. He has not provided the court with the substance of the deposition. In lieu of submitting text from the actual deposition, Hachigian supports his claim with one self-serving declaration that asserts Dr. Dorr's testimony "will confirm that the surgery performed by [the defendant] did in fact misalign the inserts in the femer [sic] and tibia bones of Plaintiff's knee." Without further evidence, it is impossible for this court to evaluate the veracity of Hachigian's assertions and the appropriateness of the trial court's actions. (See *Margolin v. Regional Planning Com.* (1982) 134 Cal.App.3d 999, 1006, fn. 2 ["Appellants have recited in their brief considerable testimony apparently taken from depositions in this matter. Inasmuch as the depositions were not made part of the record on appeal, those portions of appellants' briefs have not been considered by this court."].)

Even if we were to assume, *arguendo*, that the content of the deposition supported appellant's claim, "[g]enerally, the admission of a deposition is a matter within the discretion of the trial court." (*George v. Double D Foods, Inc.* (1984) 155 Cal.App.3d

15

36, 44; internal citation omitted.) The court would have been within its discretion to exclude the deposition as cumulative given of Dr. Graboff's testimony or on the basis that it was hearsay.

## IV. Exclusion of Testimony Regarding the Cost of Appellant's Total Right Knee Replacement Did Not Result in Prejudice.

Hachigian argues that he should have been allowed to present evidence of the cost of his right knee surgery to prove the cost of future revision surgery on his left knee. Even were we to conclude that the trial court should have permitted Hachigian to present the evidence of the cost of appellant's right knee surgery, Hachigian cannot prove that his case was prejudiced in any way by the exclusion of this evidence. The crux of Hachigian's argument rests on the proposition that he was precluded from testifying to the damages element of medical malpractice. He speculates that what "probably happened in this case" was that the jury, not provided with evidence of damages, felt they had no choice but to find for Gilbert. Hachigian cannot make the logical leap to assume that the jury must have found Gilbert was not negligent in his treatment solely because he felt he was precluded from demonstrating the cost of revision surgery.

Finally, the issue of damages is a moot point given that the jury verdict was based on the finding that Gilbert was not negligent. This is particularly true considering the instructions given to a jury before rendering a special verdict implore the jurors to "consider each question separately." (CACI No. 5012.) Again, barring evidence to the contrary, we must assume that the jury followed the instructions given. (*Atkins v. Bisigier* (1971) 16 Cal.App.3d 414, 424.) The jury did not reach the issue of damage.[8] Because of this, Hachigian would not be prejudiced even if the trial court had erred.

---

[8] Given this conclusion, we do not reach the merits of Hachigian's contention that the court erred in striking Dr. Graboff's testimony about the future cost of revision surgery on Hachigian's left knee. In light of the jury's finding on liability, any error with respect to limiting Dr. Graboff's testimony is harmless.

16

## *DISPOSITION*

The judgment is reversed. In accord with the views expressed in this opinion, the matter is remanded for further proceedings on the cause of action for fraud. Each party shall pay his own costs on appeal.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**

**SEGAL, J.**[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.