[Civ. No. 16374.   First Dist., Div. One.   Aug. 3, 1955.]

JAMES J. McBRIDE, Appellant, v. ZEONA P. PAOLI et al., Respondents.

Pedder, Ferguson & Pedder and George A. Andrews, Jr., for Appellant.

Forrest A. Cobb, James W. Harvey, Morrison, Hohfeld, Foerster, Shuman & Clark for Respondents.

WOOD (Fred B.), J.—Plaintiff brought this action for 10 per cent of the proceeds of the sale of all the capital stock of Ray Oil Burner Company, a California corporation, predicated upon the asserted exercise by plaintiff of an alleged oral option to purchase from defendant Ray Paoli* 10 per cent (25,000 shares) of the capital stock of that company.

He pleaded his cause in two counts: In the first count, as a part of a joint adventure between these parties and R. C. Westover; in the second count, the same with additional allegations designed to show a constructive trust in plaintiff's favor. A general demurrer to the second count was sustained and the case was tried upon the issues framed by the first count and the answer thereto. The trial court found against the plaintiff and he has appealed. He claims the evidence does not support the findings of fact and that the court erred in sustaining the demurrer to his second count.

*Concerning the alleged oral agreement the court found as follows:* In March, 1949, the entire capital stock of Ray Oil Burner Company, a Delaware corporation, was for sale at the price of $1,900,000. Plaintiff, defendant, R. C. Westover, E. E. Austin and B. L. Haviside discussed forming a California corporation which might purchase the Delaware corporation stock and that each of them might take $50,000 worth of the stock of the new corporation which might borrow the balance of the purchase price upon its note and their individual proportionate guarantees and pledges, and that each of the five might receive and own 20 per cent of the shares of the capital stock of the new corporation. In April, 1949,

*Ray Paoli died pending this appeal and his executors have been substituted for him. However, for the sake of convenience, we refer to him as the defendant.

Austin withdrew and defendant discussed purchasing the $50,000 worth of stock which Austin had considered acquiring. Thereafter and before the new corporation was formed Haviside withdrew. Thereafter on April 18, 1949, plaintiff, defendant and Westover had a conversation in San Francisco and further discussed the situation. Plaintiff and Westover indicated their desire to acquire the 20 per cent of stock which Haviside had considered acquiring but said they did not have the money. Defendant stated in substance that in order that the proposed purchase not be lost he would be willing to purchase the Haviside 20 per cent. The three orally agreed they would take steps to bring about the incorporation and would purchase the capital stock of Rayco, Inc.,* a California corporation, which they anticipated would purchase the capital stock of the Delaware corporation, and that each would personally guarantee, in proportion to the percentage of shares in Rayco to be purchased and held by him, any indebtedness incurred by Rayco in making the purchase and would pledge their respective shares as security for their individual proportionate guarantees.

In said conversation on April 18, 1949, there was discussed the subject whether plaintiff and Westover might purchase from defendant one-half of the Rayco stock which Haviside had considered purchasing and defendant said to plaintiff and Westover that they might each purchase 10 per cent of the stock of Rayco, Inc. within five years upon the condition that Westover give up his law practice and become president of the corporation and upon the further condition that plaintiff contribute his personal services and pitch in and help make the business a success. Thereupon Westover said that for each 10 per cent the price should be $25,000, together with a sum of money equal to the reasonable appreciation in the value of the stock, but defendant did not hear said statement by Westover with reference to the price to be paid and he did not in any manner assent to said statement and there was never at any time any meeting of the minds of the parties or any agreement between them on the subject of the price to be paid for 10 per cent of the stock if either plaintiff or Westover should desire to purchase 10 per cent of the stock within five years. In said conversation on April 18, 1949, defendant orally agreed to pay $150,000 for 60 per cent of

---

*Under that name it was formed, later changed to Ray Oil Burner Company.

the stock of the new corporation, plaintiff agreed to pay $50,000 for 20 per cent of the stock, and Westover agreed to pay $50,000 for 20 per cent of the stock. The conversation in which plaintiff claims defendant agreed to sell him 25,000 shares of Rayco stock took place after the parties had previously agreed to each and every term and provision of the entire project, by reason of which there was no consideration to defendant for anything that was said on the subject of plaintiff's having the right to buy 25,000 shares of Rayco at any time within five years.

They incorporated Rayco. Each of the three paid the amount of his subscription and received one share for each dollar paid and became and continued the sole owner of the particular shares received by him, free and clear of all right, claim or interest of the others, except that each orally agreed not to sell his shares to any other person without first offering such shares to the others at the same price.

Rayco purchased the stock of the Delaware corporation, paying $565,000 in cash (realized from the sale of its stock to its incorporators and from the liquidation of the Delaware corporation) and its promissory note for the balance, payable $935,000 on January 1, 1950, and $100,000 a year starting on January 1, 1956. Rayco effected an arrangement with a bank whereby it borrowed $350,000 toward its January 1, 1950, payment, which loan was guaranteed by the individual and proportionate guarantees of plaintiff, defendant and Westover and by the individual pledge by each of his shares of Rayco stock.

*Of these findings, plaintiff challenges two as not supported by the evidence: The finding that there was no agreement as to price and that there was no consideration for the asserted option.*

■ In support of the finding that there was no meeting of the minds as to price is defendant's testimony that plaintiff and Westover were mistaken in regard to there having been a discussion between the three regarding price; that there was no discussion as to price. In disallowing that testimony plaintiff invokes certain changes which defendant made in his deposition, as typed, before he signed it. As corrected, it is consistent with his testimony on the stand. The portions which he corrected did not necessarily reflect his answers as originally given or if some of them did they may have resulted from a misunderstanding by the witness of the meaning of certain questions. That conceivably could happen in view of

the fact that he understood and spoke English imperfectly. The reporter who took and transcribed the deposition was not called by plaintiff to testify concerning the accuracy of his notes or of the transcription. Also, in at least one instance the unchanged answer to one of the questions was "no price was discussed." There is no basis for a reviewing court to overrule the appraisal which the trier of the facts made of the testimony of this witness.

It is apparent that the court believed Westover's testimony that Westover proposed certain terms as to price and reconciled that testimony with defendant's testimony that price was not discussed, by inferring that defendant did not hear Westover's proposal, which came at the end of a brief and hurried discussion. Plaintiff, asked upon deposition if defendant had anything to say about what the price would be, replied "No, no, he didn't say 'Yes' or 'No.' I mean, we were in a hurry, getting things put together." Again asked, he said "I don't think he replied. If he did, I don't know. I mean, we were in a rush to get things put together and it was acceptable to him." Here again it was a question of fact, not of law, and the evidence supports the finding.

Plaintiff challenges the finding that there was no consideration for the alleged option, claiming it was an integral part of the whole undertaking and a material inducement to him in subscribing and paying for the 25,000 shares which he acquired at the inception of the enterprise. But there is evidence that plaintiff, Westover and defendant had already agreed to take 20 per cent, 20 per cent, and 60 per cent, respectively, of the stock of the new corporation, and to pay therefor $50,000, $50,000, and $150,000, respectively, and all that remained was for defendant to arrange with his banker for the $150,000, which he did and thereupon went to Westover's office to complete the transaction. While there, the conversation concerning the granting of the alleged option developed. Plaintiff testified that nothing was said at that conversation as to whether he would or would not be interested in making the arrangements without the 10 per cent agreement on behalf of defendant and that prior thereto they had many discussions involving other aspects of the operation of this company, if and when they acquired it. Support for the finding appears also in the testimony of Westover.*

---

*Westover testified: "Mr. Paoli came to my office, Mr. McBride being present, and told us that he had made the necessary arrangements with his bank so that he could pick up Mr. Haviside's interest—not his interest,

It is apparent that the finding of "no consideration" is supported by the evidence. The alleged option, therefore, was at most a mere offer, an offer which in August or September, 1949, was withdrawn by defendant when plaintiff told him that in January, 1950, he would take up the 10 per cent of stock they had talked about. Defendant replied that he could not let plaintiff have 10 per cent; he would let him have only 9 per cent; and plaintiff responded that he was not interested in 9 per cent.

■ *The court found that plaintiff failed to comply with an express material condition of the alleged oral agreement* in that he did not contribute his personal services and pitch in and help make the business a success. This failure to perform finds support in the testimony of the defendant and of the plaintiff. Plaintiff admitted he was unable to devote much time to the business until after January, 1950, other than attending directors' meetings and discussing different matters over the phone. Upon deposition, asked if he devoted much or any time to the business from the time of its acquisition, May 15, 1949, plaintiff replied "No, I haven't." He said he went out to the plant very little in 1949, 1950 or 1951.

■ *Plaintiff questions the findings that 10 per cent of the stock of the company was worth $250,000 on December 31, 1949, and $300,000 on January 28, 1950.*\* Here again plaintiff asks us to weigh the testimony and substitute our appraisal of it for that made by the trial judge. We find no basis for such a procedure. We find in the testimony which supports the court's finding no such implausibility as does the plaintiff. Quite the contrary. The witness who gave that testimony predicated his evaluation principally upon earnings (net earnings after taxes), earnings under the new arrangement, taking the period June 1 to December 31, 1949, for that purpose. He

---

but the percentage of the total stock. We congratulated one another, and then I asked each of the gentlemen present, including myself, to execute a check in the sum of $10,000.00 odd dollars. I mean, some money to take care of the formation of the corporation. It was their percentage of a $30,000.00 down payment which we had agreed to give Mrs. Ray if the deal went through. They all executed their checks at that meeting, and I believe that at that stage of the game I suggested to Mr. Paoli that I would like an opportunity—indicated to him that Jim would like an opportunity—Jim McBride—to purchase from him one-half of the twenty percent, or ten percent, of the stock that he was then picking up. I am referring to the additional twenty percent of Mr. Haviside, identified as a Haviside percentage."

\*Those dates were selected because of uncertainty whether plaintiff sought to exercise his option on the first business day or on the 28th of January, 1950.

reduced the resulting estimated annual net by an amount which in his opinion would account for a seasonal variation. In capitalizing these earnings he multiplied by a factor which he derived from the negotiated price of $1,900,000 in May of 1949 plus the $250,000 paid in for the capital stock of the corporation, divided by the amount of the 1948 net earnings after taxes, increased by the percentage of increase in the Standard & Poor Index figures between May 16 and December 31, 1949. He then deducted the amount of the debt still owed by the corporation on account of the purchase price of the Delaware corporation stock. That gave him the fair value of all the stock on December 31, 1949, which amount he divided by 10 to establish the value of the 25,000 shares in question.* His increased valuation as of January 28, 1950, resulted from a $585,000 reduction in the purchase price debt which was effected January 1, 1950, by payment from cash, not raised by borrowing.

In contrast, one of plaintiff's experts took no account of earnings. He took the book value (the $250,000 paid in for the Rayco shares plus $211,000, the net earnings after taxes during the period from May 16 to December 31, 1949) and adjusted it downward, resulting in a valuation of but $43,815.60 for 10 per cent of the stock. Thus, in fact, he valued the stock at but a few dollars more than twice the amount of its net earnings (after taxes) over a period of only seven and one-half months. No reviewing court could undertake to overrule a trial court's rejection of such a valuation.

Plaintiff's other expert arrived at a value of $56,000 for 10 per cent of the stock. He gave consideration to earnings but used the annual average over a period (1940 to 1949) which included the war years, excluding 1947 which all concerned agree was an excessively high income year because of an accumulated demand and the lifting of governmental restrictions. This gave annual net earnings of less than half the amount of those which obtained under the new management, about three-fourths of those for 1948. He capitalized

---

*Plaintiff argues it should be somewhat less than 10 per cent of the value of the entire outstanding stock, on the theory that a minority interest in such a corporation is worth less than its full percentage.

However that might be, plaintiff pleaded an option to pay $25,000 plus 10 per cent of the increase in value of the stock from the date of the agreement to the date of the exercise of the option, and he stipulated that on May 16, 1949, 10 per cent of the stock was worth 10 per cent of the value of the entire stock issued.

by multiplying by five. When asked why he used that as a factor instead of a higher number, the witness did not seem to have a clear explanation. The resultant figure was then reduced by averaging in the book value on a certain basis. Then, because the stock was closely held and not on the market, he further reduced it by 20 per cent, resulting in his appraisal of $56,000. We do not see in that testimony a type of reasoning which compels acceptance of the opinion of the witness.

The conclusion is inescapable that the findings in question have ample support in the evidence. We note in passing that, while it has no direct bearing upon values in January of 1950, the fact that plaintiff, defendant and Westover sold all their stock in December, 1951, for the aggregate sum of $5,000,000, is some indication that the valuations which defendant's expert gave and the trial court accepted were not out of line. Incidentally, in his urge to throw out the testimony upon which these findings were based, plaintiff overlooks the fact that he has the burden of proving fair value. The evidence which he adduced does not compel acceptance and was not accepted by the trier of the facts. That would leave plaintiff without proof if defendant's expert were deemed incapable of belief.

Not without significance is the finding that if defendant had agreed to sell at book value the agreement would have been highly inequitable and unfair and that such a price would have been grossly inadequate. The lack of a promise to take over (upon exercising the option) an appropriate share of defendant's guarantee of Rayco's debt to the bank, was an additional inequitable feature.

■ *Plaintiff challenges a finding that he did not offer to pay more than the book value of the stock when he undertook to exercise the asserted option.* That is supported by plaintiff's testimony that he told defendant he had obtained a valuation of $46,000 or $47,000 for 10 per cent of the stock; that defendant said the price was wrong; that plaintiff suggested defendant get an outside expert to put a price upon it and that if the parties could not agree on that price a third person would get the matter settled; but that defendant refused to do so. That was a concrete offer to pay $46,000 or $47,000 which, as the court found upon adequate evidence, was the book value, not the fair market value. Plaintiff's suggestion for arbitration did not convert it into an offer to

pay $250,000 or any other sum substantially greater than $46,000 or $47,000.

*Plaintiff questions also the finding that the formation of the California corporation and the purchase of the stock of the Delaware corporation was not a joint adventure* by plaintiff, defendant and Westover. We need not pass upon this question, for, as we have noted, the option in question was not an integral part of the enterprise.

*Plaintiff asserts there exist a number of inconsistences in the findings of fact.* Our examination of the record convinces us that this point is not well taken.

*Finally, plaintiff claims that the sustaining of a general demurrer to the constructive trust count of his amended complaint, without leave to amend, was reversible error.* We do not so view it. That count incorporated by reference all of the allegations of the first count, merely adding that because of many years of association in business plaintiff had acquired and reposed in the defendant the greatest trust, confidence and belief and therefore fully believed defendant's promise until defendant refused to perform. That relationship, if proved, might have served to toll the statute of limitations if plaintiff had proved a contract to sell, the very contract which he unsuccessfully sought to prove under the first count. Accordingly, we need not decide whether it was error to sustain the demurrer to the second count. Plaintiff sustained no prejudice therefrom.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.