Filed 1/3/19; Certified for Publication 1/30/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| HARMONY GOLD U.S.A., INC., | B284436 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC646843) |
| v. | |
| COUNTY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

   APPEAL from an order and judgment of the Superior Court of Los Angeles County, Stephanie Bowick, Judge. Affirmed.

   Law Offices of Robert A. Pool and Robert A. Pool for Plaintiff and Appellant.

   Mary C. Wickham, County Counsel, and Sangkee Peter Lee, Deputy County Counsel, for Defendants and Respondents County of Los Angeles, John Naimo, Los Angeles County Auditor-Controller, and Los Angeles County Board of Supervisors.

This appeal requires us to consider two Revenue and Taxation Code[1] sections that address a real property's "base-year value" (base value), a core metric for assessing property taxes in California. Specifically, we must consider the interplay between section 51.5, subdivision (a), which removes any otherwise applicable time limits on the assessor's ability to correct base value errors that do not involve an exercise of judgment (so-called "nonjudgmental error"), and section 80, subdivision (a)(5), which limits the years for which a property owner is entitled to have a property's base value reassessed.

Appellant Harmony Gold, Inc. (Harmony) overpaid in property taxes as a result of the assessor's nonjudgmental error; specifically, an erroneous change-in-ownership determination that reset its property's base value. Los Angeles County (the County) refunded the taxes Harmony overpaid beginning in the year Harmony first challenged the erroneous base value, but not for prior years. In the action underlying Harmony's appeal, Harmony sought to recover tax overpayments for those prior years. It also sought a declaration and writ requiring the auditor-controller to correct the tax rolls for all affected years and a declaration interpreting certain portions of the Revenue and Taxation Code (the code).

The trial court sustained a demurrer without leave to amend and dismissed Harmony's complaint. We agree with the trial court.

---

[1] Unless otherwise indicated, all code references are to the Revenue and Taxation Code.

## FACTUAL AND PROCEDURAL SUMMARY

### A. California Property Tax Calculation and Refund Actions

Because this case concerns the intricacies of California property tax law, some general background on the applicable statutory scheme is necessary to understand the record and issues on appeal.

Since the enactment of Proposition 13, the California Constitution limits property taxes to one percent of a property's base value compounded by an inflation factor. (Cal. Const., art. XIII, §§ 1, subd. (a), 2, subd. (b).) "Base-year values are reestablished only if property is purchased, is newly constructed, or if there is a change in ownership." (*Osco Drug, Inc. v. County of Orange* (1990) 221 Cal.App.3d 189, 192 (*Osco*).)

If the assessor commits an error in calculating the base value, one or all of the following may occur: (1) the assessor may correct the error on the tax rolls; (2) the taxpayer may apply for a reduction in property taxes based on an erroneous base value; and/or (3) the taxpayer may request a refund of taxes paid as a result of base value error. (*Metropolitan Culinary Services, Inc. v. County of Los Angeles* (1998) 61 Cal.App.4th 935, 943 (*Metropolitan*); *Osco, supra,* 221 Cal.App.3d at p. 193.)

Each of these processes serves a distinct purpose. First, because property taxes are calculated as a percentage of the base value (adjusted each year for inflation), correction of base value error on the tax rolls facilitates efficient and accurate property tax assessment. (See *Kuperman v. San Diego County Assessment Appeals Bd. No. 1* (2006) 137 Cal.App.4th 918, 923-924.) Correcting the base value is thus necessary, whether or not the taxpayer seeks a reduced property tax payment via an assessment application or a refund via a refund claim.

3

Applications for reduced assessment, by contrast, allow a taxpayer to contest base value calculations the taxpayer believes to be erroneous.  This is a necessary first step in either correcting the amount of taxes paid in the future, or seeking a refund. (*Sea World, Inc. v. County of San Diego* (1994) 27 Cal.App.4th 1390, 1404–1405 (*Sea World*) ["a downward adjustment in base-year value as the result of an application for a reduction challenging an assessment . . . is not the same thing as a correction based on an error or omission in the assessor's value judgment determined without the filing of an application for reduction [under section 51.5]"].)

Finally, refund actions allow taxpayers to seek those erroneous tax payments the code deems to be refundable. " 'There is a distinction between the reduction in a base-year value and a right to a refund of taxes.  The base-year value is a control figure from which an assessment is determined. The correction of the base-year value allows the assessor to determine whether there has been an overassessment or an underassessment.' " (*Sunrise Retirement Villa v. Dear* (1997) 58 Cal.App.4th 948, 956 (*Sunrise*); see *Osco, supra,* 221 Cal.App.3d at p. 193 [only after determining, via an application for reduction, when a reduction of the base value becomes effective can the county "examine whether [plaintiff] has a right to a refund and, if so, if it timely filed its claim"].)

Consistent with their distinct purposes, error correction, applications for reassessment, and refunds are separate and distinct under the code as well.  Each is governed by a different set of time limitations and procedures.  With these important distinctions in mind, we briefly outline below the limits and procedures most relevant to reviewing Harmony's claims.

### 1.  *Base Value Error Corrections*

The assessor is obligated to correct an error involving "the exercise of an assessor's judgment as to value" (so-called "judgmental error"), if the assessor discovers it within four years of the erroneous assessment.  (§ 51.5, subd. (b); see § 4837; *Sunrise, supra,* 58 Cal.App.4th at p. 953 [coining the terms "judgmental error" and "nonjudgmental error" in the context of section 51.5].)  The assessor also must correct all other types of base value error upon discovering them, regardless of how much time has passed since the errors occurred.  (§ 51.5, subd. (a); *Sunrise, supra*, 58 Cal.App.4th at p. 953.)  Examples of nonjudgmental error include failing to identify any base value at all and incorrectly concluding a change of ownership took place.  (§ 51.5, subd. (a); *Sunrise, supra*, at p. 957.)

### 2.  *Applications for Changed Assessments*

Property owners may challenge whether a base value was calculated correctly, or whether a "change in ownership" warranting recalculation has occurred, via an "application for reduction in the base-year value" filed with the local assessment appeals board.  (§§ 80, subd. (a)(3), 1603, 1605.5, subd. (a).)  In Los Angeles, this board is the County of Los Angeles Assessment Appeals Board (AAB).  Two types of time limitations apply to such applications.  First, the application must be filed within four years of the contested base value determination.  (§§ 80, subd. (a)(3), 1603.)  Second, where the application results in a reduced base value assessment, the "reduction in assessment . . . shall apply for the assessment year in which the appeal is taken and prospectively thereafter."  (§ 80, subd. (a)(5).)

5

### 3. *Tax Refund Claims*

The code permits tax refunds on several bases, including where taxes are "[e]rroneously or illegally collected."  (§ 5096, subd. (b) [addressing grounds for refund].)  Thus, when the assessor reduces the base value for a property—whether as a result of an application for changed assessment or a sua sponte assessor correction—the property owner may seek a refund of taxes paid for the years to which the reduced base value assessment applies under the code.  (§§ 51.5, subd. (d), 5096, subd. (b), 5097, 5097.2; see § 80, subd. (a)(5).)  The years to which a reduced base value assessment applies for the purposes of a refund action based on nonjudgmental error is the subject of this appeal.

Various sections in division one of the code establish procedural requirements for tax refund actions.  (See, e.g., §§ 5096, 5097, 5142; see also § 80.)  Filing an application for changed assessment with the AAB is a prerequisite for bringing a refund claim, unless the parties stipulate that the dispute does not involve any valuation issues, and the AAB accepts that stipulation.[2]  (See § 5142, subd. (b) [describing "requirement that the person affected file and prosecute an application for reduction . . . in order to exhaust administrative remedies," deemed satisfied when AAB accepts a stipulation that no valuation issues were presented]; see also § 5097.)

Once the AAB determines the base value should be reduced or accepts a stipulation regarding an assessor's correction of the

_____

[2] The code does not, however, require a property owner to raise such non-valuation issues via this stipulation process described in section 5142.  A property owner may—as Harmony did here—raise such issues via an AAB application for changed assessment instead.

6

rolls that reduces the base value, a taxpayer may make an initial claim for a refund based thereon. (§§ 5097, 5142.) This initial application must be verified and directed at the county. (*Ibid.*) Section 5097 lays out the timeline on which such a verified claim for a refund must be made. (See § 5097.) Section 5097 does not, however, address the years for which a taxpayer may obtain a refund by timely filing such a refund claim. (See *ibid.*) Only after the county denies such a claim has the taxpayer fully exhausted administrative remedies and may seek refund relief in court. (§ 5142.) The taxpayer's " 'claim for refund delineates and restricts the issues to be considered in a taxpayer's refund action.' " (*Mission Housing Development Co. v. City and County of San Francisco* (2000) 81 Cal.App.4th 522, 527.)

### B. Harmony's 2011 Application for Changed Assessment

Harmony owns a property at 962 La Cienega Boulevard, Los Angeles (the property).[3] In 2006, the Los Angeles County Assessor incorrectly determined that the property had undergone a change in ownership, and on that basis, established a new base value that increased the assessed value of the property by over $5 million. Accordingly, the taxes Harmony paid on the property increased beginning in the 2006-2007 tax year.

Harmony discovered the assessor's error in 2011, and filed an "application for changed assessment" with the AAB in November 2011. (Capitalization omitted.) Harmony's application requested "a change in the assessed value of [the]

---

[3] In considering an appeal from a judgment of dismissal entered after the sustaining of a demurrer to a complaint, we regard the facts alleged in the complaint, and reflected in the attached exhibits, as true. (*Strauss v. A. L. Randall Co.* (1983) 144 Cal.App.3d 514, 516.)

7

property"—specifically, a "reversal of the [2006] reassessment"—on the basis that "[n]o change of ownership or reassessable event [had] occurred."

The AAB agreed with Harmony and further determined that the erroneous reassessment constituted "non-judgmental error" under section 51.5, subdivision (a). On January 23, 2014, the AAB ordered that the "[a]ssessor's [r]oll . . . be restored to [the] 2006-2007 base year, with appropriate inflationary adjustments" (without specifying which roll or rolls specifically were to be so "restored.")

The assessor sought to vacate the AAB decision via a writ of administrative mandate, which the superior court ultimately denied on October 6, 2015. The auditor-controller refused to correct the 2006-2010 assessment rolls, but corrected them from 2011 onward.

## C. Harmony's Efforts to Obtain a Refund of Taxes

In January 2015, Harmony submitted to the auditor-controller, in the manner required by the code, a written claim for refund of taxes overpaid since the 2006-2007 tax year as a result of the assessor's error. The County ultimately refunded the amount Harmony had overpaid for tax year 2011-2012, the year in which Harmony filed its initial application for changed assessment with the AAB, and all years thereafter. But the County denied Harmony's refund request for overpayments made in all years before 2011-2012 (i.e., 2006-2007 through 2009-2010, inclusive).

On January 23, 2017, Harmony filed a complaint against the County, the Los Angeles County Auditor-Controller John Naimo, and the Los Angeles County Board of Supervisors (collectively respondents), seeking these 2006-2010 overpayments as "[e]rroneously [and] illegally collected" taxes. (See § 5096,

8

subd. (b) [listing "[e]rroneously or illegally collected" taxes as a ground for refund claim].) The complaint also sought, under Code of Civil Procedure sections 1060 and 1085, respectively, a declaration and preemptory writ of mandate requiring the auditor-controller to correct all of Harmony's affected assessment rolls from 2006 onward. Finally, the complaint sought a declaration interpreting certain portions of the code.

## D.    The Trial Court's Judgment

Respondents demurred to the complaint, relying in large part on section 80, subdivision (a)(5). That subdivision provides: "Any reduction in assessment made as the result of an [application for changed assessment] under this section shall apply for the assessment year in which the appeal is taken and prospectively thereafter."[4] As this subdivision is key to the

---

**4** Section 80 provides: "(a) An application for reduction in the base-year value of an assessment on the current local roll may be filed during the regular filing period for that year . . . subject to the following limitations: [¶] (1) The base-year value determined by a local board of equalization or by the State Board of Equalization, originally or on remand by a court, or by a court shall be conclusively presumed to be the base-year value for any 1975 assessment which was appealed. [¶] . . . [¶] (4) *The base-year value determined pursuant to Section 51.5 shall be conclusively presumed to be the base-year value unless an application for equalization is filed during the appropriate equalization period for the year in which the error is corrected or in any of the three succeeding years. Once an application is filed, the base-year value determined pursuant to that application shall be conclusively presumed to be the base-year value for that assessment.* [¶] *(5) Any reduction in assessment made as the result of an appeal under this section shall apply for the assessment year in which the appeal is taken and prospectively*

9

issues on appeal, for ease of reference, we shall refer to it as the "prospective assessment limit." As contemplated in the prospective assessment limit, the reduction in assessment of the property was "made as a result of" Harmony's "application for changed assessment." (Capitalization omitted.) Thus, respondents argued, that reduced assessment applied beginning in 2011, the year Harmony filed its application, and Harmony's refund claim based thereon was likewise limited to taxes paid for tax years 2011-2012 and later.

The trial court agreed with respondents, sustained the demurrer on all claims, and dismissed the action. Harmony timely appealed.

## STANDARD OF REVIEW

In an appeal from a judgment of dismissal after a sustained demurrer, we review non-equitable claims in a complaint de novo to determine whether the complaint "alleges facts sufficient to state a cause of action under any legal theory." (*Aguilera v. Heiman* (2009) 54 Cal.App.4th 590, 595 (*Aguilera*).) We must affirm if the demurrer would be properly sustained on any theory, even if not articulated by the trial court. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742.)

We review a trial court's decision not to entertain an action for declaratory relief for abuse of discretion. (*Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 647.) Finally, we review the trial court's decision to deny leave to amend following

---

*thereafter.* [¶] *(b) This section does not prohibit the filing of an application for appeal where a new value was placed on the roll pursuant to Section 51.* [¶] (c) An application for equalization made pursuant to Section 620 or Section 1605 when determined, shall be conclusively presumed to be the base-year value in the same manner as provided herein." (§ 80, italics added.)

demurrer for abuse of discretion as well. (*Aguilera, supra*, 174 Cal.App.4th at p. 595.) "[I]t is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

## DISCUSSION

### I. TAX REFUND CLAIM

#### A. Section 80 Bars Harmony's Tax Refund Claim

Harmony argues that the trial court incorrectly interpreted section 80's prospective assessment limit as prohibiting Harmony's tax refund claim for the years before 2011. According to Harmony, because section 51.5, subdivision (a) gives an assessor an unlimited period of time to correct nonjudgmental errors, Harmony may seek a refund of property taxes "[e]rroneously or illegally collected" over a likewise unlimited period of time, as long as the underlying error is nonjudgmental, and Harmony complies with the statute of limitations. (§ 5096, subd. (b) [listing "[e]rroneously or illegally collected" taxes as a ground for refund claim]; see § 80, subd. (a)(4) [statute of limitations].)

No court has yet considered this proposed interpretation or the specific factual scenario alleged in Harmony's complaint. We therefore analyze section 51.5, subdivision (a), to determine whether it affords property owners such broad refund relief from nonjudgmental error and, more specifically, whether it trumps the prospective assessment limit in section 80. We look first to the statute's plain language as "the best indicators of [the Legislature's] intent." (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826.)

11

We seek to "harmonize 'the various parts of a statutory enactment . . . by considering [the language of subdivision (a)] in the context of the statutory framework as a whole" (*People v. Murphy* (2001) 25 Cal.4th 136, 142), rather than "in isolation." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)

Applying these principles, we conclude that Harmony's suggested interpretation of section 51.5 subdivision (a) is incorrect. Cases analyzing the interplay of section 51.5 and section 80 in related factual contexts support our conclusion. Section 80 therefore applies to Harmony's claims, and the section's prospective assessment limit bars refund of the pre-2011 taxes Harmony's complaint seeks to recover.

### 1. *Statutory Language and Structure of Section 51.5*

The plain language of section 51.5, subdivision (a) addresses when an assessor is obligated to "correct[ ]" nonjudgmental error—nothing more. (*Ibid.*) Section 51.5, subdivision (a) provides: "Notwithstanding any other provision of the law, any error or omission in the determination of a base[-]year value . . . including the failure to establish that base[-]year value, which does not involve the exercise of an assessor's judgment as to value, shall be corrected in any assessment year in which the error or omission is discovered.[5]

---

[5] Section 51.5 provides: "(a) Notwithstanding any other provision of the law, any error or omission in the determination of a base[-]year value pursuant to paragraph (2) of subdivision (a) of Section 110.1, including the failure to establish that base[-]year value, which does not involve the exercise of an assessor's judgment as to value, shall be corrected in any assessment year in which the error or omission is discovered. [¶] (b) An error or an omission described in subdivision (a) which involves the exercise of an assessor's

(§ 51.5, subd. (a).) To understand whether this subdivision may have a broader effect on tax refund relief, we consider other subdivisions of the section for context.

Subdivision (d) of the section contemplates the possibility of tax refunds, and provides that, in instances of both nonjudgmental error and judgmental error, "refunds of tax shall be granted in accordance with this division." (§ 51.5, subd. (d).) Notably, subdivision (d) refers to *all* otherwise applicable limitations and procedures laid out in "the division"—not just the specific code sections dealing with refunds. (*Ibid.*) Section 80 is contained in the division and lays out such additional limitations and procedures, including the prospective assessment limit.

---

judgment as to value may be corrected only if it is placed on the current roll or roll being prepared, or is otherwise corrected, within four years after July 1 of the assessment year for which the base[-]year value was first established. [¶] (c) An error or an omission involving the exercise of an assessor's judgment as to value shall not include errors or omissions resulting from the taxpayer's fraud, concealment, misrepresentation, or failure to comply with any provision of law for furnishing information required by Sections 441, 470, 480, 480.1, and 480.2, or from clerical errors. [¶] (d) If a correction authorized by subdivision (a) or (b) reduces the base[-]year value, appropriate cancellations or refunds of tax shall be granted in accordance with this division. If the correction increases the base[-]year value, appropriate escape assessments shall be imposed in accordance with this division. [¶] . . . [¶] (f) For purposes of this section: [¶] (1) 'Assessment year' means an assessment year as defined in Section 118. [¶] (2) 'Clerical errors' means only those defects of a mechanical, mathematical, or clerical nature, not involving judgment as to value, where it can be shown from papers in the assessor's office or other evidence that the defect resulted in a base[-]year value that was not intended by the assessor at the time it was determined." (§ 51.5.)

13

Although section 80 does not directly address refund relief, it is an important part of the division's overall scheme related to refunds.  Specifically, the applications for changed assessment the section addresses can provide the basis for a refund claim (as was the case here), and are in many instances a prerequisite to a refund claim.  (See §§ 5097, 5142.)  Nor is section 80 in conflict with the time restrictions on refund claims set forth elsewhere in the Division, which address only when a party may file a refund claim, not the years to which a reduction in assessment applies. (See § 5097.)[6]

Had the Legislature wanted to prevent section 80 or its prospective assessment limit from affecting refund actions like Harmony's, it could have incorporated into section 51.5, subdivision (a) a more specific list of refund-related code sections, rather than referring broadly to "the Division."  It did not. "We must "assum[e] . . . that the Legislature chose its words carefully," and that such "broad language" means the Legislature

---

[6] At oral argument, Harmony appeared to suggest that section 5096—which lists possible grounds for a refund—offers an additional basis for ignoring the prospective assessment limit in section 80.  Section 5096 provides that "[a]ny taxes paid before or after delinquency shall be refunded," if one of the bases enumerated in the statute is present.  Harmony appeared to suggest this court could read section 5096 literally— as requiring such taxes "shall be refunded," regardless of restrictions imposed on refund actions elsewhere in the code—if one of the enumerated bases is present.  Such an interpretation conflicts with common sense and fundamental canons of statutory interpretation, and would nullify the time limitations and other procedural restrictions reflected in subsequent code sections governing refund actions.  (See, e.g., §§ 5097, 5142; see also § 80.)  Section 5096 addresses grounds for refund and does not address when or how a plaintiff may pursue such a refund.

"consciously eschewed" a more narrowly tailored alternative. (*Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1108.)

Thus, nothing in the plain language of section 51.5, subdivision (a), suggests the section has any effect on—let alone expands—a taxpayer's ability to seek a refund of erroneously collected taxes, or otherwise trumps limits section 80 places on that ability.

Allowing the prospective assessment limit in section 80 to limit recovery of refunds based on nonjudgmental error also strikes an efficient and just balance between potentially competing public and private interests. In order to reliably budget public funds, the state must be able to rely on the taxes it has collected. (See *Geiger v. Board of Supervisors* (1957) 48 Cal.2d 832, 839–840 ["Before [a county board of supervisors] can properly prepare a budget, it must be able to ascertain with reasonable accuracy the amount of income which may be expected from all sources."].) The prospective assessment limit facilitates this important public goal. On the other hand, the prospective assessment limit can, as it did here, prevent a taxpayer from recovering overpayments made as a result of a county's error. But taxpayers may avoid such a result by reviewing their tax bills for irregularities and timely seeking clarification and/or relief via an application for changed assessment. Here, Harmony's 2006-2007 tax bill for the property increased substantially, but Harmony did not challenge the change-in-ownership determination underlying that increase until 2011. Had it filed its application for changed assessment the year the error was made, section 80 would have presented no obstacle to Harmony recovering *all* overpayments resulting from that error. Thus, while section 80 places the burden on the taxpayer to critically review and, as applicable, timely contest its tax bill, the law does so in the interest of public financial

15

certainty and long-term planning.  This strikes us as a fair balance.

## 2.     *Relevant Case Law*

Cases analyzing the related issues of escape assessments and refunds based on judgmental error further bolster our interpretation of section 51.5.

### a.     *Cases involving escape assessments*

Section 51.5, subdivision (a) governs all corrections of nonjudgmental base value error, including errors that incorrectly *decrease* the base value.  Subdivision (d) therefore incorporates not only the refund provisions of the division, but those provisions addressing "escape assessments"—additional taxes charged when a property is underassessed.  (§ 51.5, subd. (d).)  In *Montgomery Ward & Co. v. County of Santa Clara* (1996) 47 Cal.App.4th 1122, 1133-1138 (*Montgomery Ward*), the county sought to collect such escape assessment taxes based on an argument similar to the one Harmony offers here.  (See generally *ibid.*)  The county argued that because section 51.5, subdivision (a) removed time limits on error correction, other limitations on escape assessments elsewhere in the division— specifically, a statute of limitations in section 532—should no longer apply.  (*Montgomery Ward, supra*, 47 Cal.App.4th at pp. 1133-1134.)  The court rejected this reasoning: "The fact that there is no limitations period for correcting base[-]year values (not involving the assessor's exercise of judgment as to value) does not mean, however, that there is no limitations period for levying escape assessments based on the changed base[-]year value.  Section 51.5, subdivision (d), permits assessors to levy only 'appropriate escape assessments' when revaluation results in an increase in the base[-]year value.  [¶]  This is where section 532 comes into play." (*Ibid.*)

16

Just as section 51.5, subdivision (a) does not render inapplicable the statute of limitations in section 532, section 51.5, subdivision (a) does not render inapplicable the prospective assessment limit in section 80. Both limitations are incorporated by section 51.5, subdivision (d) and are unaffected by subdivision (a).

### b. *Cases involving refunds based on judgmental error*

Several cases have considered whether section 80's prospective assessment limit applies to applications for changed assessment and refunds based on *judgmental* error, the correction of which is addressed in section 51.5, subdivision (b). (*See Sea World, supra*, 27 Cal.App.4th at p. 1401; see also *Metropolitan*, *supra*, 61 Cal.App.4th at pp. 938, 946–948; *Osco, supra*, 221 Cal.App.3d at p. 191.) In *Sea World*, for example, the court engaged in a lengthy discussion of the legislative history and intent of section 51.5, untethered to a particular subsection or type of error. (*Sea World, supra*, 27 Cal.App.4th at pp. 1404-1407.) Based on such analysis, these cases uniformly conclude that where a property owner has overpaid in property taxes as a result of judgmental errors related to base value assessment, section 80, subdivision (a)(5) permits a county to refund only those overpayments occurring in the year the taxpayer initiates a request for reduction in base value before the AAB, and prospectively thereafter. (See, e.g., *Sea World, supra*, at p. 1403; see also *Ellis v. County of Calaveras* (2016) 245 Cal.App.4th 64, 73 ["the assessment value would only be reduced for purposes of a refund of taxes in the year in which the application was filed and in succeeding tax years. . . . This is true whether the appeal is made pursuant to section 80, subdivision (a)(3) or section 51.5"]; *Metropolitan,*

17

*supra*, 61 Cal.App.4th at pp. 942, 947 ["even though a taxpayer has four years to challenge a base[-]year value, the taxpayer can only receive a refund for the year in which the appeal is made, and thereafter"]; *Osco, supra,* 221 Cal.App.3d at p. 191 [concluding a "downward adjustment to a base-year value on the current tax roll [does not] entitle[] a taxpayer to a refund of taxes paid for years prior to the adjustment"].)

Harmony argues that these cases are inapposite, as they considered facts implicating only judgmental error, discussed in section 51.5, subdivision (b), not subdivision (a). Harmony relies on the fact that subdivisions (a) and (b) set forth different timelines on which judgmental errors and nonjudgmental errors may be corrected. But, as discussed above, error correction is distinct from refund relief and applications for changed assessment. Section 51.5, subdivision (d) addresses the latter two of these, and in so doing, does not treat judgmental and nonjudgmental error differently in any respect. Thus, the cases discussed above, although not factually on point, are instructive in interpreting section 51.5.

Harmony argues that these cases are distinguishable on the additional basis that Harmony's AAB application was filed "under Section 51.5[, subdivision ](a), not under Section 80." (Boldface omitted.) But applications for changed assessment are filed under neither of those sections; they are filed pursuant to section 1603. (See § 1603; see also § 80.) Harmony's "application for changed assessment" regarding the property, which utilized a California Board of Equalization form as specified in section 1603, is no exception. (Capitalization omitted.)

Finally, Harmony cites *Sunrise, supra*, 58 Cal.App.4th 948, as "roundly dispatch[ing] the fallacy" that "[s]ection 80[] bars the relief Harmony Gold seeks." (Capitalization omitted.) But

18

*Sunrise* does not address tax refund relief. Rather, the court in that case concluded the assessor's duty *to correct nonjudgmental errors* was not limited by the statute of limitations in section 80, subdivision (a)(3), given the Legislature's clear intent "to remove any time limits *on correcting the roll* based on nonjudgmental errors." (*Sunrise*, *supra*, 58 Cal.App.4th at pp. 958–959 [holding that "section 51.5[, subdivision ](a) errors are *correctable* at any time"], italics added.)  But in reaching this conclusion, *Sunrise* underscored that error correction and refunds are separate and distinct:  "Correction of the base-year value figure does not automatically entitle the taxpayer to a refund.  [Citation.] Refunds are governed by separate provisions of the code, and the taxpayer may only recover a refund by complying with those statutes." (*Id.* at p. 961.)  Here, those statutes do not permit a refund of taxes Harmony paid on the property for pre-2011 tax years.

### B.    Section 80 Is Constitutional

In connection with its arguments regarding leave to amend, Harmony challenges the constitutionality of section 80. We treat this as an additional legal argument in support of Harmony's complaint as currently pleaded.  (*Hendy v. Losse*, *supra*, 54 Cal.3d at p. 742 [reversible error if demurrer sustained on complaint alleging facts showing entitlement to relief on any theory].)  We conclude the argument is without merit.

Harmony relies on article II, section 10, subdivision (c) of the California Constitution (article II, section 10(c)), which prohibits the legislature from enacting statutes that effectively amend any initiative statute, unless the initiative statute permits such legislative amendment.  Harmony argues that, because an initiative statute (Proposition 13) caps property tax amounts

19

based on base value assessments, and because section 80 restricts taxpayers' ability to seek a change in assessment, section 80 reflects an unconstitutional effort by the Legislature to "amend" Proposition 13 without seeking voter approval.  Harmony points specifically to section 80's "quadrennial time limit to challenge base[-]year value assessment" and its provision for "prospective-only relief for base[-]year value reduction" as so "amending" the Proposition 13 scheme.

The proscription embodied in article II, section 10(c) is designed to " 'protect the [P]eople's initiative powers by precluding the Legislature from undoing what the [P]eople have done, without the electorate's consent.' " (*Proposition 103 Enforcement Project v. Quackenbush* (1998) 64 Cal.App.4th 1473, 1484.)  But section 80 in no way "undoes" the limits on property taxes Proposition 13 created; it sets reasonable limits on applications for reassessment that promote certainty and reliable recordkeeping.  Such applications for reassessment and tax refund actions based thereon are related to but clearly distinct from the " 'subject of [Proposition 13]' " and are something "that the initiative 'does not specifically authorize *or* prohibit.' " (*County of San Diego v. San Diego NORML* (2008) 165 Cal.App.4th 798, 830.)  Section 80 thus does not run afoul of article II of the California Constitution.  (*County of San Diego v. San Diego NORML, supra*, at p. 830.)

The prospective assessment limit in section 80, subdivision (a)(5) is constitutional and bars the tax refund claim alleged in Harmony's complaint.  The trial court thus properly sustained a demurrer of Harmony' tax refund cause of action.

## II.    DENIAL OF LEAVE TO AMEND

Harmony argues the trial court abused its discretion by denying its request for leave to amend the complaint to raise a constitutional violation.[7]  Harmony does not identify any additional *facts* it would allege in the complaint, had it been granted leave to amend, or how those facts would cure the defects discussed above and in the trial court's ruling.  (See *Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 342-343 [plaintiff's burden to identify specific factual allegations in proposed amendment to demurred complaint that would state a cause of action].)  Harmony thus has not satisfied its burden of establishing a reasonable possibility of amendment.  (*Ibid.*)

## III.    HARMONY'S DECLARATORY RELIEF AND WRIT REQUEST

Code of Civil Procedure section 1060 permits a party to seek, inter alia, "a declaration of his or her rights and duties" with respect to property where there exists an "actual controversy relating to the legal rights and duties of the respective parties."  (Code Civ. Proc., § 1060; see generally *California Public Records Research, Inc. v. County of Yolo* (2016) 4 Cal.App.5th 150, 185 (*California Public Records Research*).)  Harmony requests two types of declaratory relief under this section:  (1) a general declaration clarifying that the code requires the auditor-controller to issue property tax refunds

---

[7]  The record reflects that Harmony's request in this regard was for "more time to file additional briefing opposing the demurrer on constitutional grounds."  The court properly denied that request on the basis that Harmony "had ample opportunity to include those arguments in its opposition brief."  Separately, the court denied leave to amend without reference to Harmony's desire to challenge the constitutionality of section 80.

21

based on nonjudgmental error "without regard to any and all time restrictions," and (2) a declaration that the code requires the auditor-controller to correct the 2006 assessment roll entry for the property. Harmony also seeks a peremptory writ of mandate compelling the same conduct as would result from its second desired declaration—revision of the assessment roll for 2006—as well as correction of all subsequent years to reflect only the corrected base value of Harmony's property. We conclude Harmony has failed to carry its burden of identifying reversible error in the trial court's dismissal of these claims.

### A.   General Declaration Regarding Tax Refunds Based on Nonjudgmental Error

Harmony's desired declaration that property tax refunds based on nonjudgmental error are not subject to time limits is legally incorrect, as discussed above. Code of Civil Procedure section 1060 does not support a request for such declaratory relief, and the claim was properly dismissed. (See *California Public Records Research, supra*, 4 Cal.App.5th at p. 185.)

### B.   Declaration and Writ Requiring the Auditor-Controller to Correct Pre-2011 Assessment Rolls

Harmony seeks a second declaration "to establish that the meaning of . . . section 4837, requires [the auditor-controller] to enter on the roll on which the error was made the date and nature of the correction." " ' "The purpose of a declaratory judgment is to 'serve some *practical* end . . .' " [and] to "liquidate doubts with respect to uncertainties or controversies which might otherwise result in subsequent litigation." ' " (*Meyer v. Sprint Spectrum L.P., supra*, 45 Cal.4th at p. 647.) Thus, a " ' "test of the right to institute proceedings for declaratory judgment is the

22

necessity of present adjudication as a guide for plaintiff's future conduct in order to preserve his legal rights." ' " (*Ibid.*)

Harmony has identified no such practical need for the declaratory relief it seeks. Even if Harmony obtained its desired declaration requiring the correction of the 2006 tax roll, that correction would not entitle Harmony to a refund for any portion of the 2006-2010 period for the reasons we discuss above. This court therefore requested the parties submit letter briefs identifying what, if any, harm could be remedied by the declaratory relief Harmony seeks, *other than* effects Harmony argues such relief will have on Harmony's efforts to seek a tax refund. Neither in its letter brief, nor at oral argument, did Harmony identify any non-refund effect or need to avoid future litigation or controversy. Thus, Harmony has not carried its burden of establishing that the declaration Harmony seeks will have any practical significance, or that it is necessary to avoid future litigation or controversy.[8] (See *Meyer*, *supra*, 45 Cal.4th at p. 647.) The trial court properly dismissed the declaratory relief cause of action.

Harmony has likewise identified no prejudice resulting from the trial court's dismissal of Harmony's writ request seeking historical roll correction. Therefore, that dismissal cannot

_____

[8] Because Harmony failed to identify any non-refund-related harm that would result from the court's dismissal, we need not consider how section 4837 interacts with sections 51.5 and 80 on the facts Harmony alleges—i.e., nonjudgmental error correction "due to an assessment appeal." (See *Sea World, supra*, 27 Cal.App.4th at pp. 1406-1407 ["[C]orrections of a base[-]year value by the assessor are not the same thing as a reduction due to an assessment appeal."].) We likewise need not consider respondents' contention that Harmony has failed to plausibly allege the auditor-controller in fact refused to correct the 2006-2010 tax rolls in the manner required by the code.

constitute reversible error.  (See *McBride v. Paoli* (1955)
134 Cal.App.2d 783, 791 ["we need not decide whether it was
error to sustain the demurrer to the second count" as "[p]laintiff
sustained no prejudice therefrom"]; *People v. Singh* (2015)
234 Cal.App.4th 1319, 1330–1331 ["[I]t is not enough for an
appellant to identify an error in the proceedings in the trial court
without *affirmatively* establishing 'how the error caused a
miscarriage of justice.' . . . Mere *speculations* of prejudice are
insufficient to carry this burden."].)

In support of its writ claim, Harmony points to
section 1646.1's requirement that the assessor "forthwith correct
the roll to reflect the changes made by the county board" such
as the AAB.**9**  But nothing in section 1646.1 suggests Harmony
suffered any prejudice from the challenged dismissal, nor has
Harmony submitted any basis on which we could infer such
prejudice.

---

**9**  We note that the AAB order required only that "the
[a]ssessor's [r]oll" be corrected, without specifying whether
"[a]ssessor's [r]oll" encompassed more than the then-current roll.
Harmony's briefing on appeal incorrectly describes the AAB
order as requiring correction of defendant "County's 2006 through
2010, inclusive, secured assessment rolls."  This is in conflict
with the AAB decision, a document attached to the complaint,
in which there is no reference to any specific assessment year.
Nevertheless, given that Harmony has not carried its burden of
alleging prejudice from the alleged failure to correct, we need not
delve into the meaning of the AAB's order in this regard.

24

## DISPOSITION

The trial court's order and judgment sustaining the demurrer without leave to amend is affirmed as to all causes of action.  Respondent is awarded its costs on appeal.


                                        ROTHSCHILD, P. J.

We concur:



CHANEY, J.



BENDIX, J.

25

Filed 1/30/19

# <u>CERTIFIED FOR PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| HARMONY GOLD U.S.A., INC.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF LOS ANGELES et al.,<br><br>    Defendants and Respondents. | B284436<br><br>(Los Angeles County<br>Super. Ct. No. BC646843)<br><br>ORDER CERTIFYING<br>PUBLICATION OF OPINION |

THE COURT:

    The opinion in the above-entitled matter filed on January 3, 2019, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports, and it is so ordered.

_____

ROTHSCHILD, P. J.        CHANEY, J.        BENDIX, J.